In Re Appeal of: Janice BOYER from the decision dated 8/1/07 of the Zoning Hearing Board of Upper Merion Township.

Appeal of: Janice Boyer.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 29, 2008.
Decided Oct. 22, 2008.
Reargument Denied Dec. 12, 2008.

Rowan Keenan, Collegeville, for appellant.

Joseph J. McGrory, Jr., Lansdale, for appellee.

Kevin A. Palmer, King of Prussia, for intervenor, Allison Green.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

This is an appeal by Janice Boyer (Boyer) from the February 21, 2008 Order of the Court of Common Pleas of Montgomery County (trial court) which affirmed the decision of the Zoning Hearing Board of Upper Merion Township (ZHB) granting the variance requests of Allison Green (Green) to construct an in-ground swimming pool on her residential property. On appeal, Boyer, a neighboring property owner residing at 124 Gypsy Lane, which is adjacent to and downhill from Green's property, argues that the trial court committed errors of law or abused its discretion in upholding the decision of the ZHB.

The history underlying this dispute is that Green purchased her approximately 24,000 square feet of property, located at 138 Gypsy Lane in Gulph Mills, Upper Merion Township (Township), on October 27, 2006. The property is located within an R–1 zoning district, and contains Green's residence. On March 5, 2007,

Green applied to the ZHB for a variance from Article VII, Sections 165–29 (side yard regulations) and 165–232.4[1] (steep slope regulations) of the Upper Merion Township Code (Code)[2] so that she could install an in-ground swimming pool, approximately 36' by 18', together with associated improvements such as landscaping and decking, partially within the side yard of her property.

Section 165–29C(3) of the Code provides that, in an R–1 residential district, "... an accessory structure may be erected and maintained within the rear quarter of the lot if not closer to the side lot line than ten (10) feet." Section 165–232.4B of the Code provides that "[a]ll freestanding structures, buildings, and substantial improvements (with the exception of driveways and utilities when no other location is feasible) are prohibited in areas of significant slope and are prohibited on slopes...." The phrase "areas of significant slope" is defined in Section 165–232.3 of the Code as "[t]hose areas of a parcel containing naturally occurring slopes of 25% or greater, occupying 1,000 or more contiguous square feet." Under Section 165–27A of the Code, "... a lot may be used ... for any ... use permitted in R–1A Residential Districts." Section 165–22F of the Code (Article VI—R–1A Residential Districts) provides that an accessory use is permitted "... on the same lot with and customarily incidental to any ... permitted uses." Section 165–209A(2)(a) of the Code provides that an in-ground swimming pool is a permitted accessory use incidental to a dwelling in the Township.

The ZHB held a hearing on Green's application on June 20, 2007. According to

---

**1.** While the ZHB noted that Green applied for variances from both Sections 165–29 and 165–232.4B of the Township's Code, her application reflects only a request for a variance pursuant to Section 165–29 of the Code. This does not, however, appear to have been an issue for any of the parties to this action.

**2.** Upper Merion Township Zoning Ordinance of 1942, *as amended*, October 31, 1953.

the evidence presented at the hearing, Green's property is one of three (3) adjacent properties sharing a common driveway off Gypsy Lane, which were developed by the same developer using similar architecture. The other two (2) properties are owned by Patricia and Michael Gallagher and Patricia and Paul Seidel, respectively. These other property owners have in-ground swimming pools, and they are in favor of the ZHB granting Green's variance request.

Approximately one-half (1/2) of Green's rear yard has a naturally-occurring area of significant slopes, as defined under Sections 165–232.4B and 165–232.3 of the Township's Code. In fact, according to Green's engineering expert, Robert Ludgate, Sr. (Ludgate), they are the steepest slopes on Green's property. As a result of the steep slopes in Green's rear yard, she is not able to locate the entire pool within the rear quarter of her lot as mandated by Section 165–29C(3) of the Code. According to Ludgate, the proposed area for Green's pool is the flattest part of the property to the rear of her home which would result in the least disturbance to the steep slopes. However, in order to place the proposed pool in that area, just under half of the pool will encroach into Green's side lot, which is generally prohibited by Section 165–29C(3) of the Code. At the time Green purchased her property, she intended to install an in-ground pool at some point in the future, and she was aware of the topography, shape and size of the lot. Green and Ludgate agreed that the proposed pool could be smaller, and Green said that she was amenable to a pool of any shape, form or size.

On August 1, 2007, the ZHB granted Green's application for variance. On August 9, 2007, Boyer filed an appeal from the ZHB's decision to the trial court. On February 20, 2008, after reviewing the parties' briefs and their oral arguments thereon, the trial court affirmed the ZHB's decision. On March 7, 2008, Boyer filed an appeal to this Court.[3]

■ In land use cases, such as this one, in which the trial court has taken no additional evidence, this Court's scope of review is limited to determining whether the decision of the ZHB was supported by substantial evidence and is free of legal error. *One Meridian Partners, LLP v. Zoning Bd. of Adjustment of City of Philadelphia*, 867 A.2d 706 (Pa.Cmwlth.2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

Boyer's counsel suggested at the public hearing before the ZHB that Boyer is concerned that some catastrophic failure of the proposed pool to be perched above her home could result in significant damage to her home. On appeal, Boyer's complaint appears to be simply that Green's proposed pool violates the Township's Code. Specifically, she avers that Green already has a reasonable use of her property, that Green suffers no hardship or only a hardship she created, that placing a large pool in the proposed location will be detrimental to the public welfare, that Green's proposed insurance policy would not sufficiently address irreparable harm that may occur to downhill neighbors, and that the grant of the requested variances would not represent the minimum relief necessary.

The ZHB and, separately, Green aver that the ZHB did not commit an abuse of discretion or error of law in granting Green a dimensional variance for a per-

---

3. In response to Boyer's appeal, the trial court issued an opinion dated May 27, 2008.

mitted accessory use of an in-ground pool on residential property under the circumstances.[4] Specifically, they aver that the uncontradicted evidence before the ZHB supported its decision, since Green's property has inherent, unique physical characteristics due to its topography that prohibit its development with a permitted accessory use, and that the requested variances represent minimum accommodations consistent with the essential character of the neighborhood that would afford her relief.

As all of the parties have ably addressed, the general standard by which variances may be granted is set forth in Section 910.2(a) of the Municipalities Planning Code (MPC).[5] Section 910.2(a) of the MPC, 53 P.S. § 10910.2(a), prescribes that the ZHB "shall hear requests for variances *where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant.*" (Emphasis added). The ZHB *then:*

> may grant a variance, provided that all of the following findings are made where relevant in a given case:
>
> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be de-

veloped in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

> (3) That such unnecessary hardship has not been created by the appellant.
>
> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

*Id.*

 All parties, likewise, agree that it is necessary to determine whether the variance requested is use (*i.e.,* for a use not permitted by ordinance) or dimensional (which involves a request only for a "reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations"). *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 257, 721 A.2d 43, 47 (1998). In either case, however, an applicant must show unnecessary hardship in order to obtain a variance, although the stringency of the standard for proving an unnecessary hardship is different depending upon the type of variance sought. *Id.* While the Supreme Court did not spell out specific standards for a zoning board's examination of a dimensional variance, it did suggest that the factors in determining unneces-

---

4. The Township, an intervenor in this appeal, adopted the ZHB's arguments in opposition to Boyer's appeal of the ZHB's decision.

5. Act of July 31, 1968, P.L. 805, *as amended,* added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

sary hardship should include "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* 554 Pa. at 264, 721 A.2d at 50.

Relative to the case at hand, we determine that, in order to obtain the variances under Section 910.2(a) of the MPC, Green first had to prove that the Township's zoning ordinances inflict an unnecessary hardship on the property. Then, in order to grant the requested variances, the ZHB had to determine that the five factors set forth therein, where relevant, are satisfied.

■ As to the threshold issue of whether Green's inability to build the in-ground swimming pool of her choice due to the topography of her property represents an "unnecessary hardship," the ZHB declared in its decision that, "[d]ue to the unique physical characteristics of the Property, [Green] has proven an unnecessary hardship exists for the location of the proposed pool," and that it "has not been created by [Green] but by the unique physical characteristics of the Property." (ZHB Decision at 9). The trial court reiterated this sentiment generally, adding that "[t]he only sufficiently level spot on the property to construct a swimming pool is in the location proposed by [Green], and because that level location is not entirely within the rear quarter of the lot … strict compliance with the [Code] is not possible." (Trial Court's Opinion at 8). Boyer avers that Green knew the topography when she purchased her property; therefore, she "has no hardship, only a desire to build a swimming pool in contravention of the [z]oning [o]rdinance." (Appellant's Brief at 6). Green, however, does not specifically address the unnecessary hardship issue, other than to state that her situation was not

self-inflicted. (Appellee's Brief at 9). There is no question that in-ground swimming pools are permitted accessory uses on residential properties within R–1 Residential Districts in the Township.

The issue of whether not being able to place a desired pool in a desired location presents an unnecessary hardship is a question not previously addressed by this Court under the *Hertzberg* criteria.

■ It is well settled that variances are to be sparingly granted, and the reasons for granting them must be substantial, serious and compelling. *Valley View Civic Ass'n.* In *Yeager v. Zoning Hearing Bd. of the City of Allentown,* 779 A.2d 595, 598 (Pa.Cmwlth.2001), this Court stated that "a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses [and that a] variance, whether labeled dimensional or use, is appropriate 'only where the *property,* not the person, is subject to hardship.'" (Emphasis in original).

In *Yeager,* a car dealership sought a dimensional variance for construction of an additional facility on its property in order to sell Land Rovers. This Court affirmed the trial court's decision that reversed the grant of a dimensional variance, stating that the property owner was not entitled to the variance, since the property was "well suited to the purpose for which it [was] zoned and actually used." *Id.* The Court found that the only burden placed upon the property owner by the ordinance was upon his desire to sell Land Rovers.

Prior to *Yeager,* this Court decided *In re Leopardi,* 90 Pa.Cmwlth. 616, 496 A.2d 867 (1985), in which the property owners sought a building permit to add a garage to their residence. While a garage was a permitted accessory use under the zoning ordinance, this Court affirmed the trial

court's reversal of the request stating that "[t]he fact that a garage is permitted as an accessory use ... does not mean that [the landowners] must be allowed to construct a garage on their property in order to utilize that property reasonably." *Id.* at 869.[6]

The record in the case before us is clear that the unique, naturally-occurring topographical and physical conditions of Green's property prohibit her from placing her proposed pool entirely within the rear quarter of her property in strict compliance with the Township's Code. The evidence before the ZHB demonstrated that Green purchased the property as a residence, and she continues to use the property in that capacity. (ZHB Notes of Testimony (N.T.) at 48–49). She purchased the property with the intention of installing a swimming pool. (N.T. at 46). She had full knowledge of the property's topography when she purchased it. (N.T. at 49–50). There was no indication that the Code sections at issue burden all dimensionally compliant uses of Green's property, but only the particular use she has chosen. In fact, Green could, and is willing to, construct a smaller pool within the requirements of the Township's Code. (N.T. at 37, 39). Thus, it is not the property, but Green, that is arguably subject to hardship. Yet it is clear to this Court, based upon controlling law, that the Township's Code does not place an unnecessary hardship on the property.

In order for the ZHB to have properly examined Green's application under Section 910.2(a) of the MPC it must first have found that the Township's Code placed an unnecessary hardship *on her property.* Instead, the ZHB merely declared, and the trial court opined, that the unique physical characteristics of Green's property were an unnecessary hardship for Green. Because Green failed to establish that the property was subject to unnecessary hardship, the ZHB erred in reaching the five-part analysis under Section 910.2(a) of the MPC. We therefore hold that the trial court erred in affirming the August 1, 2007 order of the ZHB.

Accordingly, the trial court's order is reversed.

### ORDER

AND NOW, this 22nd day of October, 2008, the Order of the Court of Common Pleas of Montgomery County in the above-captioned matter is REVERSED.

---

6. On appeal, the Supreme Court reversed that part of the Court's order which affirmed the trial court's order that the garage at issue be removed on grounds of *ultra vires. In re Leopardi,* 516 Pa. 115, 532 A.2d 311 (1987).