# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theodore M. Dunn and Lori N. Dunn,   :
               Appellants   :
                                 :
           v.                 :   No. 1436 C.D. 2015
                                 :   Argued: May 13, 2016
Middletown Township Zoning       :
Hearing Board                :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                 **FILED: July 11, 2016**

In this zoning appeal, we examine whether a zoning hearing board can grant lot width and density variances without any proof of hardship. More specifically, Theodore M. Dunn and Lori N. Dunn (Objectors) ask whether the Court of Common Pleas of Bucks County (trial court) erred in affirming a decision of the Middletown Township Zoning Hearing Board (ZHB) that granted Revonah Construction Company's (Applicant) requests for three variances from the Middletown Township Zoning Ordinance (zoning ordinance). Because the ZHB erred in granting variance relief based on the facts presented, we reverse.

## I. Background

Applicant owns a 79,954 square foot parcel located at 1755 Fulling Mill Road in Langhorne, Middletown Township (Township), Pennsylvania (property). The property is improved with a vacant, ranch style, single-family detached home with an access walkway and driveway. Objectors own an adjacent

property at 1737 Fulling Mill Road. Both properties lie within an RA-2 Residence Agricultural Zoning District.

Applicant proposes to demolish the vacant home on the property and subdivide the property into three lots. Lot 1 would be 30,008 square feet and accommodate a single-family home. Lot 2 would be 30,152 square feet and accommodate an additional single-family home. Lot 3 would be 19,794 square feet; Applicant proposes to merge this undeveloped lot with a contiguous property, which is already improved with a single-family home.

In August 2014, Applicant filed an application with the ZHB seeking three variances from Section 500-503 of the zoning ordinance. In particular, Applicant sought two variances from Section 500-503(B) of the zoning ordinance, which requires a minimum lot width of 125 feet, to allow a lot width of 106.73 feet on Lot 1 and a lot width of 107.24 feet on Lot 2. Applicant also sought a variance from Section 500-503(C) of the zoning ordinance to allow a density of 1.45 dwelling units per acre rather than the required maximum 1.2 dwelling units per acre.

The ZHB held a hearing on Applicant's variance requests. William Hess, Applicant's President (Applicant's President), testified the homes Applicant proposes to construct on Lots 1 and 2 would be "high-end" single-family homes marketed at approximately $630,000. ZHB Dec., 10/13/14, Finding of Fact No. 8. Applicant's President testified the house currently located on the property is in very poor condition.

2

Heath Dumack, who the ZHB qualified as a civil engineering expert (Applicant's Engineer), testified the property is approximately 212 feet wide and 410 feet deep. Applicant's Engineer testified Lots 1 and 2 would meet all of the dimensional requirements for the RA-2 zoning district except the minimum lot width and maximum lot density requirements. Applicant's Engineer testified there was no adjoining property for sale that would allow Applicant to meet the minimum width requirement and the width of the proposed lots would be deficient by approximately 15 percent. Applicant's Engineer testified Applicant would comply with local storm water runoff regulations, and Applicant would plant vegetation on the sides of the proposed subdivided lots as a buffer between adjoining properties.

*Nine* neighbors testified in opposition to Applicant's variance requests. These witnesses testified Applicant could make use of the existing home on the property without any variance relief. They also expressed concern about storm water runoff. These witnesses also testified the proposed two-story homes on Lots 1 and 2 would disrupt the character of the neighborhood, which consists of one-story ranch homes. They also testified the proposed homes would devalue their properties.

Jim Schurr, a Township resident, testified he is familiar with Applicant and its President. He testified Applicant's proposed homes would enhance the neighborhood. Schurr also testified the existing home on the property is the least aesthetically attractive house on Fulling Mill Road.

3

Based on the evidence presented, the ZHB made the following conclusions of law:

1. The [property] has been developed and used as is permitted by right in the RA-2 [district].

2. The proposed subdivision creates two building lots that meet all of the dimensional requirements of the [zoning] [o]rdinance with the exception of the lot width at building set back line, which is required to be 125 feet per [zoning] [o]rdinance §500-503.B.

3. As the law requires that conflicts within [z]oning [o]rdinances be resolved in favor of the property owner, the maximum density requirement of 1.2 dwelling units per acre, contained at §500-503.C, in this instance, would require a building lot greater in size than the minimum lot area requirement of 30,000 square feet.

4. Accordingly, the [ZHB] concludes that a variance from §500-503.C is necessary and warranted.

5. This is not an application for a use variance, rather only one for a minor deviation from one of the dimensional requirements of the [zoning] [o]rdinance.

6. Based upon all of the competent and credible evidence received by the [ZHB], it concludes that the construction of the two homes proposed will enhance both the [property] specifically and the neighborhood generally.

7. Any potential stormwater impacts will be mitigated by compliance with the stormwater management requirements of [the] Township and other appropriate governmental agencies.

8. There was no evidence presented by the opponents to the application that the construction of these two homes would negatively impact property values. Rather, only supposition and conjecture were offered by the opponents in this regard.

4

9. The subdivision of the [p]roperty as proposed, and the creation of two new single-family residences, as proposed, will have no negative impact upon surrounding properties or uses.

10. Although the opponents made reference to a 1989 [ZHB] decision which denied a subdivision of the [property] into two lots, that decision was based upon the creation of a flag lot which only had a 25 foot width at building set back line. This application resolves that major variance from the [zoning] [o]rdinance and satisfies the [ZHB] that [Applicant] is seeking the minimum variance necessary to afford it relief.

11. Accordingly, the Members of the [ZHB], determined, unanimously, to grant [Applicant's] request[s] for relief as is set forth hereafter:

ZHB Dec., Concls. of Law Nos. 1-11.

Objectors appealed to the trial court. Without taking additional evidence, the trial court affirmed. This appeal followed.

## II. Issues

On appeal,[1] Objectors argue the trial court erred in determining the ZHB did not err or abuse its discretion in granting Applicant three variances to subdivide the property, raze an existing home on the property and construct two new homes on the property. They further assert the *de minimis* variance doctrine, cited by the trial court, but not relied on by the ZHB, does not justify the ZHB's grant of Applicant's three variance requests.

---

[1] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005).

5

## III. Discussion
### A. Contentions

Objectors first argue the ZHB erred in granting Applicant's variance requests where Applicant did not establish unnecessary hardship would result if the ZHB denied the variances. Reviewing the standards for the grant of a variance, and applying those standards to the facts presented here, Objectors assert, makes it patently clear that the ZHB erred in granting the variances. To that end, the property has been and can continue to be utilized in conformity with the zoning ordinance, and Applicant did not even attempt to argue any variances were necessary to enable reasonable use of the property.

Further, Objectors contend Applicant cannot argue economic hardship exists here. Indeed, Applicant purchased the property intending to subdivide it for its economic gain. Objectors also maintain that, assuming, without conceding, that denial the requested relief would cause Applicant economic hardship, it is well-settled that economic hardship alone is insufficient to justify the grant of a variance. See, e.g., Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh, 721 A.2d 43 (Pa. 1998). Here, Applicant was aware of the property's zoning classification and the existing, conforming use of the property; his desire to subdivide the property is driven solely by economics. Objectors argue the ZHB here completely disregarded the provisions of the Pennsylvania Municipalities Planning Code[2] (MPC), Hertzberg and the remaining body of Pennsylvania law that make it clear that Applicant was in no way entitled to the three variances sought.

_____

[2] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101–11202.

6

Objectors further maintain that Cardamone v. Whitpain Township Zoning Hearing Board, 771 A.2d 103 (Pa. Cmwlth. 2001), in which a landowner sought a dimensional variance in connection with his proposal to subdivide a property into two lots, also compels reversal of the ZHB's decision.

In addition, Objectors note the ZHB's Conclusion of Law No. 9 states: "The subdivision of the [property] as proposed, and the creation of two single-family residences, as proposed, will have no negative impact upon surrounding properties or uses." Objectors argue the record does not support this determination. Rather, the overwhelming weight of the evidence regarding the proposed development's impact on surrounding properties and landowners indicated the proposal would adversely impact the surrounding neighborhood. Objectors contend the ZHB abused its discretion in reaching a contrary determination.

Objectors also maintain the ZHB's Conclusion of Law No. 5 is both an abuse of discretion and an error of law. It states: "5. This is not an application for a use variance, rather only one for a minor deviation from one of the dimensional requirements of the [zoning] [o]rdinance." On this point, Objectors assert Leonard v. Zoning Hearing Board of City of Bethlehem, 583 A.2d 11 (Pa. Cmwlth. 1990) controls. There, this Court declined "to establish … that a subdivision creating a 6% plus deviation from the ordinance lot size minimum may be permitted solely on the basis that such deviation is *de minimis*." Id. at 13. Objectors argue Applicant's requested variances are not minor deviations for purposes of the *de minimis* doctrine because they constitute a 15% deviation from

7

the minimum lot width requirement, see Section 500-503(B) of the zoning ordinance, and a 17% deviation from the maximum density requirement, see Section 500-503(C) of the zoning ordinance. Objectors contend, for the ZHB to conclude a 15% to 17% deficiency from a dimensional requirement is a "minor deviation" disregards settled law and is, therefore, an abuse of discretion.

Objectors maintain Applicant merely seeks to profit on its purchase of a two-acre property, which is already improved with a single-family home. Objectors argue Applicant needs to subdivide the property in order to maximize profit, and unfortunately for Applicant, the property is not wide enough to accommodate two homes instead of one. Objectors also note a prior owner of the property unsuccessfully attempted to do precisely what Applicant proposes here, subdivide the property, and the ZHB correctly rejected that request as the owner did not prove any hardship that would justify the grant of a lot width variance, the same type of variance Applicant now seeks.

In addition, Objectors argue the *de minimis* variance doctrine does not justify the dimensional variances granted here. They maintain the trial court conceded the *de minimis* doctrine is a narrow exception to the heavy burden of proof involved in seeking a variance. Objectors assert Leonard and other appellate cases hold the doctrine is to be applied in rare instances where only a minor deviation from a zoning ordinance is sought. As argued above, Objectors contend, for the ZHB to conclude a 15% to 17% deficiency from a zoning ordinance's minimum dimensional requirement is "minor" where, as here, the ZHB seems focused on the profit to be made by the developer if it is granted relief from the

8

zoning ordinance's requirements, is a clear abuse of discretion as well as a disregard of settled law regarding *de minimis* variances.

The ZHB[3] and Applicant counter that the credited evidence establishes Applicant's zoning plan would preserve the essential character of the RA-2 district and would not be detrimental to the public welfare. They argue the ZHB credited Applicant's Engineer's testimony that Applicant would plant vegetation buffers around the property and would comply with local storm water runoff requirements. The ZHB and Applicant point out the ZHB did not credit the objecting landowners' testimony that Applicant's proposed development would decrease property values or otherwise interfere with surrounding properties. The ZHB and Applicant argue the ZHB credited Applicant's Engineer's testimony that Applicant's zoning plan would benefit neighboring properties by allowing them to connect to water and sewer utilities. They also maintain the ZHB credited Schurr's testimony that Applicant's proposed homes would enhance the aesthetics of the neighborhood.

The ZHB and Applicant also assert the ZHB properly granted the variance from the maximum density requirement set forth in Section 500-503(C) of the zoning ordinance as that requirement would conflict with Applicant's ability to comply with the minimum lot area requirement in Section 500-503(A) of the zoning ordinance. To that end, Section 603.1 of the MPC,[4] states:

---

[3] The Township joins in the ZHB's brief.

[4] Act of July 31, 1968, P.L. 805, as amended, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10603.1.

9

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

53 P.S. §10603.1.

Here, the ZHB and Applicant argue the zoning ordinance requires a maximum density of 1.2 dwellings per acre in the RA-2 district. The zoning ordinance also requires a minimum lot size of 30,000 square feet. However, in order to enforce the maximum density requirement, a lot must exceed the 30,000 square-foot minimum lot area requirement. Here, they assert, each of the proposed lots meets, and even exceeds, the minimum lot area requirement, yet the proposed development still fails to meet the maximum density requirement of 1.2 dwellings per acre. The ZHB and Applicant contend this creates a conflict between two separate provisions of the zoning ordinance.

The ZHB and Applicant further argue the ZHB properly concluded Applicant's two requested variances from the minimum lot width requirement were *de minimis*. Zoning hearing boards have discretion to grant or deny a *de minimis* variance. Hawk v. City of Pittsburgh Zoning Bd. of Adjustment, 38 A.3d 1061 (Pa. Cmwlth. 2012). "There are no set criteria for determining what will be considered *de minimis*. Instead, the grant of a *de minimis* variance depends upon the circumstances of each case." Id. at 1066. The ZHB and Applicant argue the degree of variation is only one of many factors the ZHB could consider in deciding

to grant a *de minimis* variance. They contend the circumstances presented here warrant a *de minimis* variance as the credited evidence established Applicant's zoning plan would preserve the essential character of and be beneficial to the surrounding neighborhood.

The ZHB and Applicant also argue this case is factually distinguishable from Leonard, relied on by Objectors. In Leonard, the landowner sought to subdivide his property into two 7,500 square foot lots and build a home on each lot. The landowner sought a variance from the local ordinance, which set the minimum lot size at 8,000 square feet. The zoning board granted the landowner a *de minimis* variance, and the common pleas court affirmed. On appeal, this Court reversed, concluding the variance was not *de minimis*. This Court's decision was based in part on its determinations that the property at issue was not irregularly shaped and its subdivision would not maintain any open and undeveloped space. The ZHB and Applicant maintain, in contrast to Leonard, here the property is almost twice as deep as it is wide and there is no additional property for sale that would correct its irregular shape. The ZHB and Applicant assert this case is also distinguishable from Leonard because Applicant's plan to merge the proposed undeveloped Lot 3 with a contiguous property would maintain open and undeveloped space. Instead, this case is more akin to West Bradford Township v. Evans, 384 A.2d 1382 (Pa. Cmwlth. 1978), which this Court distinguished in Leonard.

## B. Analysis

A ZHB may grant a variance when the following criteria are met:

11

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

Tri-County Landfill, Inc. v. Pine Twp. Zoning Hearing Bd., 83 A.3d 488, 520 (Pa. Cmwlth.), appeal denied, 101 A.3d 788 (Pa. 2014) (citation omitted).[5]

---

[5] Similarly, the zoning ordinance states, as relevant:

A. Applicability. Upon appeal from a decision by the Zoning Officer, the [ZHB] shall have the power to vary or adapt the strict application of any of the requirements of this chapter where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the enactment of the chapter or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition on such piece of property, the strict application of any regulation enacted under this chapter would result in peculiar and exceptional and undue hardship upon the owner of such property, but in no other case.

B. Condition. In general, the power to authorize a variance from the terms of this chapter shall be sparingly exercised and only under peculiar and exceptional circumstances.

C. Requirements and standards. No variance in the strict application of the provisions of this chapter shall be granted by the [ZHB] unless the [ZHB] finds that the requirements and standards are satisfied.

(1) The applicant must prove that the variance will not be contrary to the public interest and that practical difficulty and unnecessary hardship will result if it is not granted. In particular, the applicant shall establish and substantiate that the request for the variance is in conformance with all the requirements and standards listed below:

**(Footnote continued on next page…)**

12

A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. Hertzberg. The same criteria apply to use and dimensional variances. Id. However, in Hertzberg, our Supreme Court set forth a more relaxed

---

**(continued…)**

> (a) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located.
>
> (b) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is, therefore, necessary to enable the reasonable use of the property.
>
> (c) That such unnecessary hardship has not been created by the applicant or that the applicant at the time that he purchased the property was not aware or could not reasonably have been expected to be aware of the zoning classification and restrictions placed on the property or the circumstances giving rise to the hardship.
>
> (d) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> (e) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Section 500-3107(A)-(C) of the zoning ordinance.

standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance.

Under Hertzberg, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." Id. at 50.

Although Hertzberg eased the requirements, it did not remove them. Tri-County. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. Id. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in Hertzberg. Id.

### 1. Maximum Density Requirement

Section 500-503 of the zoning ordinance, which sets forth the area and dimensional requirements for the RA-2 district, states, in relevant part:

> Unless a greater area or dimensional regulation is stated in § 500-502, Use regulations, for a specific use, all uses in the RA-2 District shall meet the following requirements:
>
> A.      Minimum lot area: 30,000 square feet
>
> * * * *

14

C.     Maximum density: 1.2 dwelling units per acre.

Sections 500-503 (A), (C) of the zoning ordinance.

In granting Applicant relief from the maximum density requirement, the ZHB made the following pertinent findings and conclusions:

> 3. The [p]roperty is located in the [RA-2 district] of [the] Township.  It is 79,954 square feet in size.  It accommodates a ranch style single-family detached dwelling with typical residential access walkways and a driveway.
>
> 4. The residential structure on the [p]roperty is presently vacant.
>
> 5. [Applicant] proposes to demolish the existing residential structure and to subdivide the [p]roperty into three lots as follows:
>
>> (1) Lot 1, which is proposed to be 30,008 square feet in size to accommodate a single-family residential building lot;
>>
>> (2) Lot 2, which is proposed to be 30,152 square feet in size to accommodate a second residential building lot; and
>>
>> (3) Lot 3, which is 19,794 square feet in size which is proposed to be merged with a contiguous property tax parcel #22-69-265.  That tax parcel accommodates a single-family detached dwelling which fronts on Carlene Court.  It is lawfully nonconforming to the minimum lot width requirement of §500-503.B which requires a minimum lot width of [sic] at the building setback line of 125 feet.  Its existing lot width is 106.84 feet.
>
> 6. The existing single family residential use is permitted by right in the [RA-2 district] in which the [p]roperty is located.
>
> 7. Similarly, according to [zoning] [o]rdinance §500-503.A, a single-family residential use is permitted, by right, in the [RA-2 district] on lots that are at least 30,000 square feet in size.

15

\* \* \* \*

14. Based upon the competent evidence of [Applicant's Engineer], who was qualified to testify as an expert in civil engineering, the proposed structures on each of the two building lots will meet the front, rear, and side yard setback distances, building coverage, building height, and impervious surface coverage ratio requirements of §500-503 of the [zoning] [o]rdinance. Each of the proposed building lots will meet the minimum lot area requirement of 30,000 square feet set forth at §500-503.A.

\* \* \* \*

19. The two building lots will result in a building density of 1.45 dwelling units per acre. [Zoning] [o]rdinance §500-503.C limits the density to 1.2 dwelling units per acre. However, [Applicant's Engineer] credibly testified that he performed calculations that indicate that, if §500-503.C is followed, it would require a lot area of 36,300 square feet. This lot area is in conflict with the minimum lot area of 30,000 square feet set forth at §500-503.A.

\* \* \* \*

3. As the law requires that conflicts within [z]oning [o]rdinances be resolved in favor of the property owner, the maximum density requirement of 1.2 dwelling units per acre, contained at §500-503.C, in this instance, would require a building lot greater in size than the minimum lot area requirement of 30,000 square feet.

4. Accordingly, the [ZHB] concludes that a variance from §500-503.C is necessary and warranted.

F.F. Nos. 3-7, 14, 19; Concls. of Law Nos. 3, 4. Upon review, we conclude the ZHB erred in granting Applicant a variance from Section 500-503(C) of the zoning ordinance's maximum density requirement for several reasons.

16

First, it is clear the ZHB did not grant Applicant relief from the zoning ordinance's maximum density requirement on the ground that Applicant proved it satisfied the elements necessary for a *de minimis* variance. See, e.g., Appletree Land Dev. v. Zoning Hearing Bd. of York Twp., 834 A.2d 1214, 1216 (Pa. Cmwlth. 2003) ("The *de minimis* variance doctrine is a narrow exception to the heavy burden of proof involved in seeking a variance. The doctrine applies only where: (1) a minor deviation from the dimensional uses of a zoning ordinance is sought, and (2) rigid compliance with the zoning ordinance is not necessary to protect the public policy concerns inherent in the ordinance.") (emphasis added) (citations omitted).

Further, despite granting Applicant a variance from the maximum density requirement, the ZHB made no determination that Applicant proved the requisite unnecessary hardship or that any alleged unnecessary hardship was not self-inflicted. This is not surprising given that Applicant only needs the variance from the maximum density requirement because it intends to subdivide the property and build two homes resulting in a violation of the maximum density requirement despite the fact that it can use the property for one compliant home. Thus, Applicant is creating the alleged hardship it seeks to remedy. Additionally, because Applicant could use the property for one compliant home without the need for zoning relief, the variance is not the minimum variance that would afford relief.

Nevertheless, the ZHB granted the "variance" from the maximum density requirement on the ground that it conflicted with the minimum lot area requirement. More particularly, the ZHB determined Applicant's two proposed

17

building lots would result in a building density of 1.45 dwelling units per acre. F.F. No. 19. The ZHB noted Section 500-503(C) of the zoning ordinance limits the density to 1.2 dwelling units per acre. Id. However, the ZHB found Applicant's Engineer credibly testified that he performed calculations that indicate that, if Section 500-503(C) is followed, it would require a lot area of 36,300 square feet.[6] Id. The ZHB determined this lot area is in conflict with the minimum lot area of 30,000 square feet set forth in Section 500-503(A) of the zoning ordinance. Concl. of Law No. 3. As the law requires that conflicts within zoning ordinances be resolved in favor of the property owner, the ZHB stated, the maximum density requirement of 1.2 dwelling units per acre set forth in Section 500-503(C), in this instance, would require a building lot greater in size than the minimum lot area requirement of 30,000 square feet. Id. Thus, according to the ZHB, a variance was "necessary and warranted." Concl. of Law No. 4.

Contrary to the ZHB's determination, we perceive no conflict between the lot area and density provisions. More particularly, Section 500-503(C) of the zoning ordinance sets forth a *maximum* density of 1.2 dwelling units per acre. On the other hand, Section 500-503(A) of the zoning ordinance requires a *minimum* lot *area* of 30,000 square feet.[7] Thus, the zoning ordinance requires that lots in the

---

[6] Although the ZHB credited Applicant's Engineer's testimony on this point, our review of the ZHB's hearing transcript reveals Applicant's Engineer offered no such testimony. Rather, Applicant's counsel made this statement.

[7] Section 500-202 of the zoning ordinance defines "density" as "a measure of the number of dwelling units per unit of area. It shall be expressed in dwelling units per acre. The measure is arrived at by dividing the number of dwelling units by the base site area." Id. (emphasis added). That Section separately defines "lot area" as: "The area contained within the property lines of the individual parcels of land shown on a subdivision plan, excluding any area within an existing or designated future street right-of-way or any area required as open space under this **(Footnote continued on next page…)**

RA-2 district be *at least* 30,000 square feet *and* contain a *maximum* of 1.2 dwelling units per acre (or 43,560 square feet). Simply stated, Section 500-503(C) places a cap on the allowable density (or intensity) of a permitted use permitted in the RA-2 district, while Section 500-503(A) sets a floor for the size of a lot on which a permitted use may occur. Here, proposed Lots 1 and 2 slightly exceed (and therefore satisfy) the *minimum* lot area requirement, but Applicant seeks a variance to increase the *maximum* permissible 1.2 dwelling units per acre, which would increase the permissible *intensity* of use in the RA-2 district. Because there is no conflict between the zoning ordinance's minimum lot area and maximum density provisions, the ZHB erred in positing a conflict and granting a variance on this basis.

Under the ZHB's interpretation, as long as the minimum lot area of 30,000 square feet is satisfied, the maximum density requirement of 1.2 dwelling units per acre must give way; therefore, an applicant could exceed the maximum density requirement to any degree as long as its lot satisfies the minimum lot area requirement. Such an interpretation would yield an absurd result, which we must presume the local governing body did not intend in enacting the lot area and density provisions. See 1 Pa. C.S. §1922(1) (in ascertaining the intention of the

---

**(continued…)**

chapter and including the area of any easements." Id. (emphasis added). Clearly, "lot area" and "density," which are separately defined terms, are discrete concepts that regulate different aspects of each lot.

19

legislative body in the enactment of an ordinance, court may presume the legislative body does not intend a result that is absurd or unreasonable.)[8]

We also reject the ZHB and Applicant's reliance on Section 603.1 of the MPC. "While it is undeniable that we are to interpret ambiguous language in an ordinance in favor of the property owner and against any implied extension of the restriction, such a restrictive reading of an ordinance is unwarranted where 'the words of the zoning ordinance are clear and free from any ambiguity.'" City of Hope v. Sadsbury Twp. Zoning Hearing Bd., 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006) (quoting Isaacs v. Wilkes-Barre City Zoning Hearing Bd., 612 A.2d 559, 561 (Pa. Cmwlth. 1992)) (emphasis added). Thus, "[w]hile it is true that zoning ordinances are to be liberally construed to allow the broadest possible use of land, it is also true that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words." Tri-County, 83 A.3d at 510 (quoting Zappala Grp., Inc. v. Zoning Hearing Bd. of Town of McCandless, 810 A.2d 708, 710 (Pa. Cmwlth. 2002)). Because we perceive no conflict here based on the plain language of the zoning ordinance's minimum lot area and maximum density provisions, the rule set forth in Section 603.1 of the MPC does not apply.

In any event, the proper method for raising a purported conflict between the zoning ordinance's minimum lot area and maximum density provisions would be through a substantive validity challenge. However, Applicant

---

[8] Although the Statutory Construction Act, 1 Pa. C.S. §§ 1501-1991, does not apply expressly to zoning ordinances, the principles contained in that act are followed in construing a local ordinance. Trojnacki v. Bd. of Supervisors of Solebury Twp., 842 A.2d 503 (Pa. Cmwlth. 2004).

20

did not raise a substantive validity challenge to the zoning ordinance, and the ZHB did not utilize that rationale in granting Applicant's request for relief from the maximum density provision.

For all these reasons, the ZHB erred in granting Applicant variance relief from the zoning ordinance's maximum density requirement.

## 2. Lot Width Requirement

As to the lot width requirement in the RA-2 district, Section 500-503 of the zoning ordinance states:

> Unless a greater area or dimensional regulation is stated in § 500-502, Use regulations, for a specific use, all uses in the RA-2 District shall meet the following requirements:
>
> * * * *
>
> B.      Minimum lot width:   125 feet.

Section 500-503(B) of the zoning ordinance.

The ZHB found Applicant's proposed Lot 1 would have a lot width of 106.73 feet and proposed Lot 2 would have a lot width of 107.24 feet.  F.F. No. 15. In granting relief from the 125-foot lot width requirement set forth in Section 500-503(B), a deviation of approximately 15%, the ZHB stated Applicant's request involved only a "minor deviation from one of the dimensional requirements of the [zoning] [o]rdinance."  Concl. of Law No. 5.  The ZHB also determined the construction of the two proposed new homes would enhance the property and the neighborhood, Concl. of Law No. 6, and would not adversely impact property

21

values or have a negative impact on surrounding properties or uses. Concls. of Law Nos. 8-9.

Despite these determinations, the ZHB made no determination that Applicant proved the requisite unnecessary hardship, nor did it find any alleged hardship was not self-inflicted. To that end, Applicant will need the two lot width variances because it intends to create two new undersized lots where none currently exist. As such, Applicant will be creating the undersized lot hardship it seeks to remedy. Further, while Applicant asserts the property is irregularly shaped because it is twice as wide as it is deep, the ZHB made no finding that this purported irregular shape necessitated variance relief. And, in any event, the property as it currently exists is over 200 feet wide, which is substantially greater than the minimum lot width required under the zoning ordinance. Moreover, it is beyond dispute that no variance is needed for Applicant to make reasonable use of the property for *one* single-family home (indeed, a single-family home currently exists on the property). Rather, Applicant seeks variance relief in order to subdivide the property and construct *two* single-family homes in an effort to maximize profitability. This is not sufficient to constitute unnecessary hardship. Tri-County; Cardamone.[9]

Indeed, where no hardship is shown, or where the asserted hardship amounts to a landowner's mere desire to increase profitability, the unnecessary

---

[9] Further, although the ZHB made a passing reference to the fact that Applicant seeks the minimum variance that would afford relief, see Concl. of Law No. 10, this statement was in error given that Applicant can use the property for one single-family home without the need for *any* variance relief.

hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth by the Supreme Court in Hertzberg.  See, e.g., Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment, 42 A.3d 1178 (Pa. Cmwlth. 2012) (rejecting applicants' request for dimensional variance from zoning code's loading space requirement where need for variance was triggered by applicants' desire to expand use of property to maximize profitability); Singer v. Zoning Bd. of Adjustment of City of Phila., 29 A.3d 144 (Pa. Cmwlth. 2011) (rejecting applicant's request for dimensional variances from zoning code's parking, floor area ratio and loading dock requirements where asserted hardship amounted to applicant's desire to maximize development potential of property); Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh, 997 A.2d 423 (Pa. Cmwlth. 2010) (rejecting applicant's request for dimensional variance for proposed sign where only asserted hardship involved alleged benefit to community and increase in income); Twp. of Northampton v. Zoning Hearing Bd. of Northampton Twp., 969 A.2d 24 (Pa. Cmwlth. 2009) (rejecting applicant's request for variance from ordinance's off-street parking requirements where no evidence of hardship presented even under relaxed Hertzberg standard and evidence revealed applicant could use property in a manner consistent with ordinance requirements); In re Boyer, 960 A.2d 179 (Pa. Cmwlth. 2008) (rejecting applicant's requests for dimensional variances from ordinance's steep slope and setback requirements in order to construct in-ground pool where no evidence of hardship presented even under relaxed Hertzberg standard); Se. Chester County Refuse Auth. v. Zoning Hearing Bd. of London Grove Twp., 898 A.2d 680 (Pa. Cmwlth. 2006) (rejecting request for dimensional variance where evidence indicated applicant could continue to operate at a profit without variance relief; no

hardship shown); One Meridian Partners, LLP v. Zoning Board of Adjustment of City of Phila., 867 A.2d 706 (Pa. Cmwlth. 2005) (rejecting request for dimensional variance from floor area ratio and height requirements where asserted hardship was essentially financial in nature); Yeager v. Zoning Hearing Board of City of Allentown, 779 A.2d 595 (Pa. Cmwlth. 2001) (rejecting applicant's request for dimensional variances from ordinance's setback and clear sight triangle requirements where only hardship amounted to applicant's desire to construct a building for its new car dealership that complied with specifications required by vehicle manufacturer).

In addition, while the ZHB noted Applicant's requested deviations from the zoning ordinance's lot width requirement were minor, it did not explicitly reference the *de minimis* variance doctrine in granting relief from the zoning ordinance's minimum lot width requirement.

As noted above, the *de minimis* variance doctrine is a narrow exception to the heavy burden of proof involved in seeking a variance. Appletree Land Dev. It applies *only* where: (1) a minor deviation from the dimensional requirements of a zoning ordinance is sought, and (2) rigid compliance with the zoning ordinance is not necessary to protect the public policy concerns inherent in the ordinance. Id.

While it can be inferred that the ZHB determined that rigid compliance with the zoning ordinance was not necessary to protect the public policy concerns inherent in the ordinance, see Concls. of Law Nos. 6-9, the ZHB

24

made no such express determination. Moreover, the property lies in the RA-2 Residence Agricultural zoning district, the purpose and intent of which is as follows:

> The RA-2 Residence Agricultural District is composed of <u>low-density residential areas of the Township</u> and open areas where similar residential development is likely to occur. The purposes of this district are to permit residential development <u>at a low density</u> to provide a transition zone between agricultural areas and medium-density residential development; to provide standards which will encourage the installation of public facilities and <u>the preservation of permanent public open space</u>; to exclude activities of a commercial or industrial nature and any activities not compatible with residential development; and to otherwise create conditions conducive to carrying out the purposes of this chapter as set forth in § 500-101.

Section 500-501 of the zoning ordinance (emphasis added). Clearly, the zoning ordinance's minimum lot width requirement is important to these objectives. <u>See</u>, e.g., <u>Appeal of Ressler Mill Found.</u>, 573 A.2d 675 (Pa. Cmwlth. 1990) (lot width requirement works in conjunction with minimum lot area requirement to create open space).

In addition, we agree with Objectors that the ZHB erred in granting as *de minimis* the *two* lot width variances Applicant sought in light of our decision in <u>Leonard</u>. There, the applicants sought a dimensional variance to subdivide their conforming 15,000 square foot lot into two non-compliant lots with each lot being 7,500 square feet rather than the required 8,000 square feet. The proposed deviation was 6.25%. In reversing decisions of the zoning board and the court of

25

common pleas that approved the variance as *de minimis*, this Court explained (with emphasis added):

> The [applicants] contend that this deviation is *de minimis* (1) under [West Bradford Township] and (2) in light of the lot sizes of other properties in the neighborhood.
>
> West Bradford Township is similar to the case *sub judice* in that the *de minimis* doctrine was applied to a subdivision of property. However, the subdivision here would create the non-conformity while in West Bradford Township the subdivision merely intensified what appears to be a pre-existing non-conformity. Furthermore, the lot to be subdivided in West Bradford Township was irregularly shaped, which is not the case here. Likewise, one of the lots created by the subdivision in West Bradford Township was to be maintained as open, undeveloped space, which again is not the case here.
>
> Because of the factual dissimilarities between West Bradford Township and the case *sub judice*, we decline to find West Bradford Township dispositive here. The unique circumstances that supported application of the *de minimis* doctrine there simply are not present here so as to justify a departure from the well-established burden of proof customarily carried by a party seeking a variance.
>
> Nor do we find persuasive the [applicants'] assertion that the deviations here are *de minimis* in light of this particular neighborhood. The record indicates that there are lots within the immediate vicinity of the [applicants'] property which conform to the ordinance's minimum lot size requirement, some of which are comparable to the [applicants'] 15,000 square foot property. Simply because there may be some lots in this neighborhood which are less than 8,000 square feet is not, in our opinion, sufficient to establish entitlement to a variance. See Braccia v. Township of Upper Moreland Zoning Hearing Board, [] 327 A.2d 886 ([Pa. Cmwlth.] 1974) (a variance was denied despite the fact that only 2 of 25 parking lots complied with the parking space dimensions required under the zoning regulations); see also Campbell v. Ughes, [] 298 A.2d 690 ([Pa. Cmwlth.] 1972) (this Court reversed the granting of a variance

26

from an 85 foot lot width requirement despite evidence that 16 of 24 lots in the block had widths of less than 85 feet).

> In any event, we must be mindful that zoning boards and courts function, *inter alia*, to enforce zoning ordinances in accordance with applicable law; not to impose their concepts of what the ordinance ought to be. Gottlieb v. Zoning Hearing Board of Lower Moreland Township, [] 349 A.2d 61 ([Pa. Cmwlth.] 1975). We must also be mindful that the *de minimis* doctrine is an extremely narrow exception to the heavy burden of proof that a party seeking a variance must normally bear.

> In accordance therewith, we now hold that the 500 square foot deviations here are not *de minimis* as a matter of law. See Andreucci v. The Zoning Hearing Board of Lower Milford Township, [] 522 A.2d 107 ([Pa. Cmwlth.] 1987) (an 8% deviation from an ordinance's minimum lot size was not *de minimis*). Thus, we decline to establish in the zoning law of this Commonwealth by decision in this case that a subdivision creating a 6% plus deviation from the ordinance lot size minimum may be permitted solely on the basis that such deviation is *de minimis*.

> Because we have found that the [b]oard erred in applying the *de minimis* doctrine to this case and because the [applicants'] failed to establish any unnecessary hardship so as to entitle them to a traditional variance, we will reverse the [common pleas] court's order which affirmed the [b]oard's decision.

Leonard, 583 A.2d at 12-13 (footnote omitted).


Here, as in Leonard, and unlike in West Bradford Township, the subdivision would *create* the non-conformity as to lot width for the two proposed newly created lots. Additionally, similar to Leonard and unlike in West Bradford Township (in which the property at issue was "L-shaped"), the property here is not irregularly shaped; indeed, the ZHB here made no finding that the shape of the

27

property justified the grant of *two* variances from the zoning ordinance's lot width requirement. Further, as we pointed out in Leonard, unlike West Bradford Township in which one of the lots created by the subdivision was proposed to be maintained as open, undeveloped space, such is not the case here as proposed Lots 1 and 2 would each contain single family homes and proposed Lot 3, to which Applicant would add square footage, already contains a single-family home.

In addition, relying on our prior decision in Andreuccci, which held an 8% deviation from a minimum lot size requirement was not *de minimis* as a matter of law, in Leonard we declined to hold that the 500-square foot (or 6.25%) deviations from the ordinance's lot area requirement was *de minimis*. See also D'Amato v. Zoning Bd. of Adjustment of City of Phila., 585 A.2d 580 (Pa. Cmwlth. 1991) (13% reduction in required open space was not *de minimis*). Cf. Twp. of Middletown v. Zoning Hearing Bd. of Middletown Twp., 682 A.2d 900 (Pa. Cmwlth. 1996) (6.76% increase in maximum building coverage requirement that would allow applicants to add a garage onto their home was *de minimis*); Ressler Mill Found. (4.7% deviation from required lot width (7-foot deviation from 150-foot requirement) to enable construction of single-family home and horse barn on *one* lot was *de minimis*).

Similarly here, although there is no precise mathematical percentage that marks the dividing line between *de minimis* and significant deviations,[10] we decline to hold that the *two* approximately 15% deviations from the zoning ordinance's lot width requirement, which would create *two* non-compliant lots, is

---

[10] Swemley v. Zoning Hearing Bd. of Windsor Twp., 698 A.2d 160 (Pa. Cmwlth. 1997).

28

*de minimis*.  See, e.g., Pugliese v. Zoning Hearing Bd. of Bethlehem Twp. (Pa. Cmwlth., No. 2297 C.D. 2014, filed October 15, 2015), 2015 WL 6473668 (unreported) (zoning board properly determined applicant did not prove requested deviation was insignificant where applicant sought two variances from minimum lot width requirement to subdivide property and build two homes, thereby doubling density of use and creating two substandard lots, where property could reasonably be used for one single-family home without zoning relief).[11]

For all the foregoing reasons, we reverse the trial court's order that affirmed the ZHB's decision and order granting Applicant's three variance requests.

_____
ROBERT SIMPSON, Judge

---

[11] Pursuant to Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414, an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value.

We also distinguish our unreported decision in Laskowski v. West Chester Borough Zoning Hearing Board (Pa. Cmwlth., No. 1902 C.D. 2012, filed July 11, 2013), 2013 WL 3487048, cited by Applicant, from the case at issue here.  In Laskowski, we upheld a zoning board's grant of a *de minimis* variance from a zoning ordinance's building height requirement for a proposed apartment building based, in part, on the unusual circumstances of the grading on the property.

Here, unlike in Laskowski, the ZHB did not grant Applicant's request for variance relief from the lot width requirement on the ground that the property contained unique or unusual physical features that impacted its ability to comply with the minimum lot width requirement. Indeed, it is only Applicant's proposed subdivision of the property that would render it non-compliant with the lot width requirement as the width of the existing property exceeds the zoning ordinance's minimum lot width requirement by more than 80 feet.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theodore M. Dunn and Lori N. Dunn, : 
                        Appellants : 
                                    : 
                    v. :    No. 1436 C.D. 2015
                                      : 
Middletown Township Zoning : 
Hearing Board : 

## O R D E R

**AND NOW**, this 11th day of July, 2016, the order of the Court of Common Pleas of Bucks County is **REVERSED**.

 

                                 _____

                                  ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theodore M. Dunn and            :
Lori N. Dunn,                  : No. 1436 C.D. 2015
                             : Argued: May 13, 2016
                Appellants   :
                             :
            v.               :
                             :
Middletown Township Zoning   :
Hearing Board              :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

CONCURRING AND DISSENTING OPINION
BY SENIOR JUDGE FRIEDMAN          FILED: July 11, 2016

I respectfully concur in part and dissent in part. I agree with the majority's conclusion that the ZHB erred in granting Applicant a variance from the maximum-density requirement in section 500-503.C of the Ordinance. However, I disagree with the majority's conclusion that the ZHB erred in granting Applicant two *de minimis* variances from the minimum-lot-width requirement in section 500-503.B of the Ordinance.

A zoning hearing board may grant a *de minimis* variance if: "(1) a minor deviation from the dimensional uses of a zoning ordinance is sought, and (2) rigid compliance with the zoning ordinance is not necessary to protect the public policy concerns inherent in the ordinance." *Appletree Land Development v.*

*Zoning Hearing Board of York Township*, 834 A.2d 1214, 1216 (Pa. Cmwlth. 2003). "The grant of a *de minimis* variance *is a matter of discretion* with the local zoning board." *Hawk v. City of Pittsburgh Zoning Board of Adjustment*, 38 A.3d 1061, 1066 (Pa. Cmwlth. 2012).

The majority holds that the ZHB erred in concluding that Applicant sought only minor deviations from the Ordinance's lot-width requirement, emphasizing that the proposed subdivision would create two 15-percent deviations. However, "[t]here are no set criteria for determining what will be considered *de minimis*. Instead, the grant of a *de minimis* variance *depends upon the circumstances of each case*." *Id.* (emphasis added) (footnote omitted); *see also Swemley v. Zoning Hearing Board of Windsor Township*, 698 A.2d 160, 162-63 (Pa. Cmwlth. 1997) ("[T]here is no precise mathematical percentage which marks the dividing line between *de minimis* and significant deviations.").

Unlike many cases in which we have examined *de minimis* variances, here the credited evidence establishes that Applicant's zoning plan would *benefit* the surrounding neighborhood rather than merely not be a detriment to it. (ZHB's Conclusions of Law, No. 6.) Schurr testified that the homes that Applicant proposed to build on Lots 1 and 2 would enhance the aesthetic integrity of the neighborhood. (N.T., 9/24/14, at 22.) In addition, Applicant's engineer testified that Applicant's zoning plan would allow neighboring properties to connect to water and sewer utilities. (*Id.* at 13.) Under these circumstances, I believe that the ZHB properly concluded that Applicant sought only minor deviations from the Ordinance's lot-width requirement.

Additionally, the ZHB's findings of fact and conclusions of law establish that rigid compliance with section 500-503.B of the Ordinance was not necessary to protect the Ordinance's public policy of low-density residential development and open space.[1] Applicant would merge the undeveloped Lot 3 with a contiguous property rather than developing the lot. (ZHB's Findings of Fact, No. 5(3).) Additionally, the single-family homes that Applicant proposes to build on Lots 1 and 2 would satisfy the Ordinance's requirements for lot area, yard setback distance, building height, and impervious surface coverage ratio. (*Id.*, No. 14.) Thus, Applicant's zoning plan is consistent with the Ordinance's public policy of low-density development and open space in the RA-2 Residence Agricultural District.

The majority's reliance on *Leonard v. Zoning Hearing Board of the City of Bethlehem*, 583 A.2d 11 (Pa. Cmwlth. 1990), is misplaced. Unlike the present case, the zoning hearing board in *Leonard* did not find that granting the requested variance would benefit the surrounding neighborhood. Additionally, our conclusion in *Leonard* was, in part, based on the applicant's failure to maintain open space as part of his proposed subdivision of the property. *Id.* at 13. Because Applicant's zoning plan would preserve open space consistent with the Ordinance's public policy, *Leonard* is distinguishable. Therefore, I would conclude that the ZHB properly granted Applicant two *de minimis* variances from the minimum-lot-width requirement in section 500-503.B of the Ordinance.

---

[1] Although the majority states that the ZHB did not expressly conclude that Applicant satisfied this requirement for a *de minimis* variance, the majority acknowledges that "it can be inferred" from the ZHB's decision that the ZHB concluded that Applicant satisfied this requirement. (Maj. Op. at 24-25.)

Accordingly, I concur in part and dissent in part.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

.