IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of: Jay and Wendi Huttner, :
David Logan, Lisa Braun, Susan A. :
Maslow and Richard Goldhammer, :
Dennis and Olivia Hillmyer, Ken S. :
and Chris Hantman, and :
Maia Pennink :
: No. 52 C.D. 2017
From the Decision of: The : Submitted: October 17, 2017
Northampton Township Zoning :
Hearing Board :
:
In Re: The Application of Rare :
Ventures, LLC :
:
Appeal of: Rare Ventures, LLC :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  December 11, 2017


        Rare Ventures, LLC (Appellant) appeals from the December 14, 2016

order of the Court of Common Pleas of Bucks County (trial court), which reversed

a decision of the Northampton Township (Township) Zoning Hearing Board (ZHB)

granting Appellant's request for dimensional variances.  We affirm.

        Margaret Weiner and Appellant, her assignee, sought to subdivide a

9.98-acre parcel of land at 450 Worthington Mill Road, Richboro, Pennsylvania,

(Property) into four lots. The Property is located in the CR Country Residential

Zoning District where uses permitted by right include the following:

> 1. One single-family detached dwelling, per environmental performance standards in §27-1120.[1]
>
> 2. Agriculture, including the tilling of soil, the raising of livestock, horses or poultry, nurseries, landscape operations and tree farms.
>
> 3. Kennels.

---

[1] Ordinance section 27-1120 sets forth special restrictions in EP Environmental-Protection, CR Country Residential, AR Agricultural-Residential, and R-1 Single Family Districts and states in part:

> No development shall occur in any of the following areas:
>
> A. Steep slopes, provided that:
>
>   (1) No more than 30 percent of areas containing steep slopes above 15 percent and below 25 percent shall be developed and/or regraded or stripped of vegetation.
>
>   (2) No more than 15 percent of areas containing slopes of 25 percent or more shall be developed and/or regraded or stripped of vegetation
>
> B. Within any area of the Floodplain and Flood Hazard District or within 50 feet of the center line of any stream, creek, river or other watercourse, whichever is greater, except as permitted in Part 7.
>
> \* \* \*
>
> E. Within any forest area, provided that no more than 20 percent of such areas may be developed and/or regraded or stripped of vegetation.

Reproduced Record (R.R.) at 231a.

4. Horse-boarding and riding academies.

5. No-impact home-based business, where such business is located in a dwelling and provided such use shall not supersede any deed restriction, covenant or agreement restricting the use of land . . . .

Ordinance Section 27-404, R.R. at 160a. The Property is presently encumbered by a residential structure and two barns.

Appellant applied for relief concerning the minimum lot size, minimum lot width, and minimum width of the access strip to the Property. Appellant requested variances from Ordinance Section 27-404.2.A.(1), requiring a minimum lot size of 2.0 acres, to permit Lots 1 and 4 to have a lot area of 1.04 acres and 1.15 acres, respectively; a variance from Ordinance Section 27-404.2.A.(2), requiring a minimum lot width of 200 feet at the building setback line, to permit Lot 1 to have a lot width of 142.01 feet; and a variance from Ordinance Section 27-1119.4.B, which requires the width of the access strip or stem of a flag lot to be a minimum of 30 feet, to permit stem widths of 20 feet for lots 2 and 3.

The ZHB held a hearing on February 11, 2013. The Township appeared through its counsel and expressed support for the application. Heath A. Dumack, P.E., testified on Appellant's behalf. Dumack described the Property as pie-shaped; it is narrower where it fronts Worthington Mill Road and widens toward the rear. He estimated that 60% of the Property is covered by woods, a stream, and steep slopes. Dumack testified that Appellant's plan was intended to preserve the beauty of the lot and protect the bulk of its natural resources, so that the upper plateau, adjacent to Worthington Mill Road, would be the only impacted area. He stated that Appellant had presented approximately six different plans in an effort to best configure a four-lot subdivision on the site.

3

Dumack testified that, as proposed, Lots 1 and 4 would be 1.05 and 1.15 acres in lot area, respectively. Lots 2 and 3 would conform to the ordinance's flag lot requirements, except for the shared access. He stated that the Property could not be "properly subdivided" with its existing physical constraints without variances. R.R. at 59a. Dumack acknowledged that it was possible to increase the area of Lots 1 and 4, which have direct frontage on Worthington Mill Road. He explained that doing so would ultimately create a sort of reverse flag lot stem extending into Lots 2 and 3 going into the rear of the Property and would disturb the natural resources in excess of what the ordinance permits, requiring variances related to the woodland and steep slope requirements. Dumack believed that the plan as proposed represents the minimum relief necessary to avoid disturbing the woodlands and steep slopes.

Dumack conceded that, "realistically we could [have disturbed more woodland] and [we] looked at potentially disturbing a larger percentage of those woods. We decided as part of the design process not to, to attempt to protect everything that was towards the rear of the site, the woodlands, the steep slope and the stream." R.R. at 87a.

Dumack opined that any subdivision of the Property would require a variance. He noted that the Property has only 370 feet of frontage along Worthington Mill Road, so that a variance from the ordinance's width requirement would be necessary to subdivide the Property into only two lots. R.R. at 74a. He added that increasing the width of the access strip for the flag lots, Lots 2 and 3, would further reduce the width of Lots 1 and 4 by 10 feet each and consequently reduce the area of those lots. R.R. at 64a.

Jay Huttner owns property at 485 Worthington Mill Road, directly across the street from the Property. In response to Huttner's questions, Dumack

4

acknowledged that the steep slopes lend themselves to be buildable lots and that the Property could be subdivided differently if the ZHB denied the requested variances. R.R. at 75a-77a. Dumack said that although it was possible to build on the steep slopes, variances would be needed to cross the stream. R.R. at 75a-76a. He added that it was common to build on steep slopes, citing homes with walkout basements as an example, and he testified that he had designed homes with steeper slopes than were on the Property. R.R. at 88a-89a.

Lisa Braun, who owns property at 489 Worthington Mill Road, expressed concern that while the proposal seeks to lessen impact on the rear lots, the views from the street would be disturbed. Dumack stated that the views had not been considered. R.R. at 79a-82a. Jerry Mercado lives at 449 Worthington Mill Road. He noted that the wooded area of the Property cannot be seen from the road. He asked if the reason the development was planned to be closer to the street was that more extensive construction would be required to develop the wooded area. Dumack answered that the developers could have disturbed a larger percentage of the woods and considered doing so, but ultimately decided not to, in order to protect the woodland, steep slopes, and stream at the rear of the site. R.R. at 87a. Dumack noted that under the proposed application, those resources are almost completely protected. R.R. at 93a.

The ZHB observed that the 9.98-acre Property could accommodate four 2-acre lots. The ZHB concluded that, "because the Property is cone shaped and narrow at the street, *the unnecessary hardship prevents the reasonable use of the Property for a 4-lot subdivision* without a variance." R.R. at 24a-25a (emphasis added). The ZHB determined that Appellant did not create the unnecessary hardship, and found that the requested variances will not alter the essential character

5

of the neighborhood or be detrimental to the public's health, safety, and welfare. The ZHB emphasized that the proposed design of the subdivision protects existing environmentally sensitive areas of the Property from being significantly disturbed and will allow reasonable use of the Property. Citing Dumack's testimony, the ZHB found that the variances requested are the minimum necessary to afford relief. Accordingly, the ZHB granted Appellant's application.

Neighbors, the appellees here, appealed to the trial court. The trial court disagreed with the ZHB's premise that reasonable use of the Property required the accommodation of a subdivision with four lots and reversed the ZHB's decision. Appellant now appeals to this Court.[2]

Initially, we note that in order to be entitled to a variance, an applicant must demonstrate:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

---

[2] Where, as here, the trial court has taken no additional evidence, our scope of review is limited to determining whether the ZHB abused its discretion or committed an error of law. *Southdown, Inc. v. Jackson Township Zoning Hearing Board*, 809 A.2d 1059, 1062 n.4 (Pa. Cmwlth. 2002).

6

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC).[3]

Additionally, "[w]here, as here, we are faced with a dimensional variance, our Supreme Court has articulated a more relaxed standard for granting a variance." *Demko v. City of Pittsburgh Zoning Board of Adjustment*, 155 A.3d 1163, 1168 (Pa. Cmwlth. 2017).

> Under this relaxed standard, when addressing the element of unnecessary hardship, 'courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.' *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, [721 A.2d 43, 50 (Pa. 1998)]. Although *Hertzberg* eased the requirements for a variance, it did not remove them. *Tidd v. Lower Saucon Township Zoning Hearing* Board, 118 A.3d 1 (Pa. Cmwlth. 2015). Moreover, despite a more relaxed standard, it is still the case that '[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling.' *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144,

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10910.2. Section 910.2 was added by the Act of December 21, 1988, P.L. 1329.

149 (Pa. Cmwlth. 2011).

*Demko*, 155 A.3d at 1168.

In rejecting the ZHB's analysis, the trial court relied on *Dunn v. Middletown Township Zoning Hearing Board*, 143 A.3d 494 (Pa. Cmwlth. 2016). Additionally, the trial court noted that there was no finding by the ZHB concerning any economic hardship if the Property were subdivided into fewer lots or "that there is a failure of reasonable usage in its current configuration." R.R. at 17a.

The facts in *Dunn* are similar to those before us. The applicant in *Dunn* owned a 79,954 square-foot parcel in Langhorne, Middletown Township, Pennsylvania (property). The property was improved with a vacant, single-family detached home located within an RA-2 Residence Agricultural Zoning District. The applicant desired to demolish the vacant home and subdivide the property into three lots. As proposed, Lot 1 would be 30,008 square feet and accommodate a single-family home; Lot 2 would be 30,152 square feet and accommodate an additional single-family home; and Lot 3 would be 19,794 square feet and would be merged with a contiguous property that was already improved with a single-family home.

The applicant applied for variances from Section 500-503.B of the zoning ordinance, which required a minimum lot width of 125 feet, to allow a lot width of 106.73 feet on Lot 1 and a lot width of 107.24 feet on Lot 2. The applicant also sought a variance from Section 500-503.C of the ordinance to allow a density of 1.45 dwelling units per acre, rather than the required maximum 1.2 dwelling units per acre.

Before the zoning hearing board, the applicant presented testimony that the proposed homes on Lots 1 and 2 would be "high-end" single-family homes marketed at approximately $630,000. Heath Dumack also testified for the applicant in *Dunn*. He stated that the property was approximately 212 feet wide and 410 feet

8

deep. He further testified that: Lots 1 and 2 would meet all of the dimensional requirements for the RA-2 zoning district except the minimum lot width and maximum lot density requirements; there was no adjoining property for sale that would allow the applicant to meet the minimum width requirement; and the width of the proposed lots would be deficient by approximately 15 percent. Dumack added that the applicant would comply with local storm water runoff regulations and would plant vegetation on the sides of the proposed subdivided lots as a buffer between adjoining properties.

Nine neighbors testified in opposition to the applicant's variance requests. They stated that the applicant could use the existing home on the property without any variance relief. They expressed concern about storm water runoff and believed that the proposed two-story homes on Lots 1 and 2 would negatively affect the character of the neighborhood and devalue their properties.

The zoning hearing board found that the proposed subdivision created two lots that met all of the dimensional requirements of the ordinance except the required 125-foot lot width at the building setback line (Section 500-503.B). The zoning hearing board also determined that the maximum density requirement of 1.2 dwelling units per acre in section 500-503.C would require a building lot greater in size than the minimum lot area requirement of 30,000 square feet. Reasoning that the law requires conflicts within zoning ordinances to be resolved in a property owner's favor, the zoning hearing board concluded that variances from the minimum lot area requirement were necessary and warranted. The objectors appealed to the trial court, which affirmed.

The objectors appealed to this Court, arguing that the applicant did not establish that unnecessary hardship would result if the zoning hearing board did not

9

grant the variances. They noted that the property had been and could continue to be used in conformity with the ordinance. Further, the objectors asserted that the applicant could not argue that economic hardship existed because the applicant purchased the property intending to subdivide it for economic gain. The objectors also asserted that the zoning hearing board erred in characterizing the application for a 15% to 17% deviation from the ordinance's minimum requirements as seeking "a minor deviation" from one of the dimensional requirements of the zoning ordinance.

In response, the applicant and the zoning hearing board asserted that the proposed plan would preserve the essential character of the zoning district and would not be detrimental to the public welfare. The zoning hearing board also argued that it properly granted *de minimis* variances.

This Court rejected the zoning hearing board's characterization of the variances as *de minimis,* as well as its conclusions that the ordinance provisions were in conflict. Relevant here, in *Dunn* we reasoned as follows:

> Applicant only needs the variance from the maximum density requirement because it intends to subdivide the property and build two homes resulting in a violation of the maximum density requirement despite the fact that it can use the property for one compliant home. Thus, Applicant is creating the alleged hardship it seeks to remedy. Additionally, because Applicant could use the property for one compliant home without the need for zoning relief, the variance is not the minimum variance that would afford relief.

*Id.* at 503. We observed that

> the ZHB made no determination that Applicant proved the requisite unnecessary hardship, nor did it find any alleged hardship was not self-inflicted. To that end, Applicant will need the two lot width variances because it intends to create two new undersized lots where none currently

10

exist[s]. As such, Applicant will be creating the undersized lot hardship it seeks to remedy. Further, while Applicant asserts the property is irregularly shaped because it is twice as wide as it is deep, the ZHB made no finding that this purported irregular shape necessitated variance relief. And, in any event, the property as it currently exists is over 200 feet wide, which is substantially greater than the minimum lot width required under the zoning ordinance. Moreover, it is beyond dispute that no variance is needed for Applicant to make reasonable use of the property for *one* single-family home (indeed, a single-family home currently exists on the property). Rather, Applicant seeks variance relief in order to subdivide the property and construct *two* single-family homes in an effort to maximize profitability. This is not sufficient to constitute unnecessary hardship. *Tri-County* [*Landfill, Inc. v. Pine Township Zoning Hearing Board*, 771 A.2d 103 (Pa. Cmwlth. 2014)]; *Cardamone* [*v. Whitpain Township Zoning Hearing Board*, 771 A.2d 103 (Pa. Cmwlth. 2001)].

*Dunn*, 143 A.3d at 505 (emphasis in original). "Further, although the ZHB made a passing reference to the fact that Applicant seeks the minimum variance that would afford relief . . . this statement was in error given that Applicant can use the property for one single-family home without the need for *any* variance relief." *Id.* at n.9 (emphasis in original). We concluded that "where no hardship is shown, or where the asserted hardship amounts to a landowner's mere desire to increase profitability, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth by the Supreme Court in *Hertzberg*." *Dunn*, 143 A.3d at 506 (collecting cases). Accordingly, we reversed the trial court's order affirming the zoning hearing board's decision.

Appellant does not address our analysis in *Dunn* or the trial court's holding that Appellant is not entitled to subdivide the Property into four lots as a matter of law. Instead, Appellant first argues that the trial court erred in failing to

11

adequately consider the impact that alternative proposals would have on environmentally sensitive areas. However, the ZHB made no findings concerning the alternative proposals that were considered, their possible impact on the "environmentally sensitive areas," or the limitations that other ordinance provisions might impose on the development of the Property. Accordingly, based on this record, Appellant's first argument fails.

Relying on *Pohlig Builders, LLC v. Zoning Hearing Board of Schuylkill Township*, 25 A.3d 1260 (Pa. Cmwlth. 2011), Appellant contends that the ZHB properly considered preserving the environmentally sensitive areas of the Property in granting the variances.

The applicant in *Pohlig* proposed to use a 65-acre property for a 51-home residential development, which was a permitted use. The property was divided into two parcels by a reservoir extension; approximately two-thirds of the property was located south of the dividing water. The sole access between the two sides of the property was a strip of land approximately fifty feet wide, which could not support a road. The applicant requested a variance from the ordinance's steep slope regulation in order to build a bridge on land containing slopes that exceeded 25%. Various township witnesses offered alternative bridge designs and locations, but the zoning hearing board determined that the variance requested would actually eliminate the negative steep slope impact and granted the variance. The township appealed, arguing that the variance was not proper because the applicant could have developed 21 lots on the northern parcel and merely sought to maximize the profitability of his land. The trial court rejected that argument as factually unsupported. The trial court also noted that a variance would allow only 945 square feet of a 65-acre tract to be disturbed.

12

On further appeal, this Court affirmed. Among other things, we highlighted the zoning hearing board's finding that it was impossible to construct an access road utilizing the existing 50-foot strip in conformity with the ordinance.

In contrast to the facts in *Pohlig*, Dumack testified, and the ZHB found, that it *was* possible to subdivide the Property into four 2-acre lots. ZHB's Finding of Fact No. 18. Additionally, Appellant's request for relief from the minimum required lot size seeks a reduction in size of almost 50%, which cannot be compared to the *de minimis* nature of the variance granted in *Pohlig*.[4]

Appellant also contends that the trial court erred in holding that the four-lot subdivision could be accommodated without the requested variances, where, for example, the Property's frontage on Worthington Mill Road is only 370 feet. To the extent that the trial court erred in making this broad statement, such error is harmless. It is clear that the trial court's decision is founded on the conclusion that

---

[4] Appellant also relies on *Holmes v. Zoning Hearing Board of Kennet Township*, 396 A.2d 859 (Pa. Cmwlth. 1978). In *Holmes,* the applicant's 2.8-acre property contained the remains of a nineteenth-century gristmill, a perennial stream, and a stand of evergreen trees. The owner sought to build two dwellings on the property, a single-family residence and a "tenant house." The tenant house was to be built on the stone foundation of the old gristmill and required a variance from the ordinance's flood hazard regulations. The zoning hearing board granted the variance, based on evidence that floodwaters would not detrimentally affect the area of the mill; the only alternate site would involve destruction of a beautiful stand of mature trees; the old gristmill foundation otherwise would have to remain unused; and the grant of the variance would not be injurious to the health, safety, and welfare of the community.

The trial court determined that the zoning hearing board abused its discretion and reversed. On further appeal, however, this Court explained that a variance may be granted "when the ordinance creates an unnecessary hardship which may be attributable to the unique physical characteristics of the property and when there would not be an adverse impact on the health, safety or welfare of the general public." *Id.* at 861. This Court disagreed that an abuse of discretion had occurred and reversed the trial court's order.

While the record in *Holmes* addressed the potential use of the property in its entirety, the record here does not include such detail. Thus, *Holmes* is distinguishable, and our analysis in that case is not controlling here.

13

Appellant is not entitled to the maximum use permissible in the zoning district based solely on the Property's size; the trial court expressly held that Appellant is not entitled to subdivide the Property into four lots as a matter of law merely because it comprises more than eight acres.

Presuming that an alternative proposal of some kind would have to be approved, Appellant relies on this Court's decision in *Tidd v. Lower Saucon Zoning Hearing Board,* 118 A.3d 1 (Pa. Cmwlth. 2015). That case involved a 24.622-acre, undeveloped parcel, located in a rural agricultural zoning district. The property was bordered entirely by a 40-foot tree line. Another tree line bisected the property, which also was encumbered by a utility easement.

The applicant sought to operate a horse farm and riding business, a permitted use in the district, and requested a dimensional variance from an ordinance requirement that all areas used to corral or pasture horses be at least 100 feet from all lot lines. The zoning hearing board credited evidence that denial of the dimensional variance would cause the applicant to forgo the use of 25% of the subject property for what was otherwise a permitted use. It also found that the applicant would suffer a financial hardship if the variance were not granted and that an agreed-upon limitation on tree removal would help harmonize the use with the rural residential nature of the surrounding area. The zoning hearing board granted the variance, and the trial court affirmed.

On appeal in *Tidd*, this Court reviewed the ZHB's findings and emphasized that they were amply supported by the record. Specifically, we noted testimony that compliance with the 100-foot setback requirement would result in a loss of approximately six-and-a-half acres of usable land, that the applicant would otherwise have to remove portions of the tree line to recover some of the useable

14

space, and that the cost of tree removal was financially burdensome. Citing our earlier decision in *Holmes,* the Court in *Tidd* considered that it was required to afford substantial deference to the ZHB's findings.

> Under *Hertzberg*, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: '*the economic detriment to the applicant if the variance was denied*, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and *the characteristics of the surrounding neighborhood*.' *Id.* at 50 (emphasis added).

*Tidd*, 118 A.3d at 17.

In this case, the evidence falls short of establishing unnecessary hardship. Dumack did not identify the ordinance provisions that govern steep slopes and woodlands or elaborate on the extent to which those provisions would limit development of the "environmentally sensitive" areas of the Property. Although Dumack indicated that regulations govern development near the stream, he did not explain how alternative development might occur; i.e., whether constructing a bridge over the stream was feasible. He did not explain what limits the ordinance imposed on cutting trees or address the specific regulations governing steep slopes. Additionally, while the ZHB emphasized that the grant of variances would have the least impact on the "environmentally sensitive areas" of the Property, ZHB's Findings of Fact, Nos. 15-17, it did not find that Appellant would suffer a financial hardship if the variances were not granted.

Finally, Appellant argues that the remaining criteria for a variance are satisfied in this case. We disagree. The current use of the Property is consistent with the ordinance requirements. Dumack acknowledged that it is possible to build on the steep slope areas, and the ZHB specifically found that the Property could be

15

subdivided into four conforming two-acre lots. The ZHB also noted that a conforming subdivision could be accomplished if a driveway was constructed across the stream and a wooded area, or if a misshapen lot was formed with a flag lot extending to the rear of the Property. Finding of Fact No. 18. No evidence was offered concerning the cost of subdividing in compliance with the ordinance, and no evidence was presented concerning the variances that would be required for any of the alternative proposals Appellant had generated. Thus, other than Dumack's self-serving opinion, the record includes no evidence to support the ZHB's determination that the variances requested represent the minimum variances that will afford relief. The fact that Appellant's proposal attempted to preserve the beauty of the lot and protect the bulk of the natural resources is laudable, but, standing alone, it does not equate to hardship.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Judge Covey did not participate in the decision of this case.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Appeal of: Jay and Wendi Huttner, | : |
| David Logan, Lisa Braun,  Susan A. | : |
| Maslow and Richard Goldhammer, | : |
| Dennis and Olivia Hillmyer, Ken S. | : |
| and Chris Hantman, and | : |
| Maia Pennink | : |
| | : No. 52 C.D. 2017 |
| From the Decision of:  The | : |
| Northampton Township Zoning | : |
| Hearing Board | : |
| | : |
| In Re:  The Application of Rare | : |
| Ventures, LLC | : |
| | : |
| Appeal of:  Rare Ventures, LLC | : |

O R D E R


AND NOW, this 11th day of December, 2017, the December 14, 2016 order of the Court of Common Pleas of Bucks County is affirmed.


_____
MICHAEL H. WOJCIK, Judge