IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles W. Shane, Jr.,                  :
              Appellant           :
                         :
        v.                      :     No. 1756 C.D. 2024
                         :     Argued: November 6, 2025
Cecil Township Zoning Hearing            :
Board and Cecil Township Board           :
of Supervisors                           :

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                      FILED:  January 15, 2026

        Charles W. Shane, Jr. (Landowner) appeals an order of the Court of Common Pleas of Washington County (trial court) holding that a proposed office building on Landowner's property had to account for the residential use of an adjacent property.  Accordingly, the proposed office building had to be set back 100 feet from the adjacent residential property line.  In so holding, the trial court affirmed the decision of the Cecil Township Zoning Hearing Board (Zoning Board) that the residential use of an adjacent property does not cease when the dwelling thereon has been condemned as uninhabitable.  It further held that Landowner did not meet the requirements applicable to his alternate request for a variance.  On appeal, Landowner contends that the trial court erred and abused its discretion in its construction and application of the Cecil Township Zoning Ordinance.[1]  For the reasons that follow, we affirm.

---

[1] CECIL TOWNSHIP UNIFIED DEVELOPMENT ORDINANCE, Ordinance No. 5-00, adopted May 17, 2000, *as amended* (Zoning Ordinance).

## Background

Landowner owns a parcel at 38 Grudevich Road (Property) in Cecil Township (Township) that is located in the C-1 General Commercial Zoning District (C-1 District). Adjacent thereto, at 52 Grudevich Road (Adjacent Property), is a parcel on which there is a single-family home that has been condemned as unfit for habitation.[2] Landowner seeks to replace the existing house on his Property with a professional office building, with a proposed side yard setback of 25 feet on each side. There is a 100-foot side yard setback required for a *commercial structure* adjacent to a residential property. However, Landowner believed that this setback requirement did not apply to his proposed development because the existing dwelling on the Adjacent Property has been condemned. As such, the Adjacent Property no longer has a residential use.

On review of Landowner's proposal, the Township's zoning officer, Elizabeth Ross (Zoning Officer), determined that a side yard setback of 100 feet was required because the Adjacent Property's residential use had not terminated. The Zoning Officer relied upon the setback requirements in the Zoning Ordinance for the C-1 District, which provide, in part, as follows:

> (3) Minimum front-yard setback: 45 feet
> (4) *Minimum side-yard setback.*
> > a) *Adjoining residential district or use: 100 feet*
> > b) *Adjoining all other: 25 feet*
> (5) Minimum rear-yard setback:

---

[2] In 2022, the Township's Code Official issued a notice of condemnation to the owner of the Adjacent Property, informing her that the house was condemned because it was unfit for human occupancy. The notice instructed the owner to make necessary repairs to bring the house into compliance with the 2012 International Property Maintenance Code (2012 IPMC) or demolish the house.

a) Adjoining residential district or use: 100 feet

b) Adjoining all other: 40 feet

ZONING ORDINANCE §907.E (emphasis added).  The Zoning Officer explained that the Adjacent Property's single-family home is a use permitted by right in the C-1 District.  As such, the abandonment standards in the Zoning Ordinance that apply to a lawful, non-conforming use of the land have no relevance.

On March 19, 2024, Landowner appealed the Zoning Officer's determination and, alternatively, applied for a dimensional variance.

At the Zoning Board hearing, Landowner introduced several exhibits, including: the Zoning Officer's March 1, 2024, determination; Landowner's application for a variance; past and current pictures of the house on the Adjacent Property; a January 4, 2022, condemnation notice issued to the owner of the Adjacent Property; and a site plan depicting the proposed business/professional office building for Landowner's Property.

The Zoning Officer testified that a business/office building is a use permitted by right in the C-1 District, where the Property is located.  The Zoning Officer confirmed her prior determination that Landowner's proposed building needed a setback of 100 feet on the side next to the Adjacent Property because the Adjacent Property has a residential use.  Landowner presented the Zoning Officer with a 2022 letter from the Township's Code Official, Michael E. Behrens (Behrens), to the owner of the Adjacent Property stating that the house thereon was "unfit for human habitation or occupancy" and giving the owner 10 days to "make the necessary repairs and improvements required to bring the dwelling unit" into compliance with the provisions of the 2012 IPMC or begin the demolition process. Reproduced Record at 129a-30a (R.R. __).  In response, the Zoning Officer testified that Behrens informed her that the Township determined not to pursue any further

3

action, even though the owner of the Adjacent Property did not make the necessary repairs to the house or demolish it.

Several neighbors testified in opposition to Landowner's appeal and variance request. Dennis Sluciak, who resides at 47 Grudevich Road, testified that his property is "basically farm land," on which he operates a small landscaping/excavating business, while the other properties on Grudevich Road are residential. Notes of Testimony, 4/15/2024, at 11 (N.T. __); R.R. 11a. He noted that the C-1 District designation was made after these homes were built. Sluciak also testified that Landowner has "been renting [] out" the house on his Property. N.T. 20; R.R. 20a. Robert McKay, who also resides on Grudevich Road, testified that the area is farmland. McKay described Landowner's Property as having approximately 400 "white pine trees" that would be removed if Landowner were to build a storage unit complex.[3] N.T. 32; R.R. 32a.

At the end of the hearing, Landowner's counsel clarified that Landowner's proposal is to develop the Property with a professional office building, not a storage facility. Regarding the application for a dimensional variance, Landowner's counsel argued that hardship was created by the fact that the Property is 300 feet wide. A 100-foot side yard setback eliminates one-third of the lot for a commercial use, which is permitted by right. This established an unnecessary hardship.

---

[3] In 2010, Landowner applied for a 75-foot dimensional variance to construct a combined self-storage facility and a contractor's yard on the Property. The Zoning Board approved Landowner's application contingent on the Township's Board of Supervisors granting Landowner's conditional use application for a self-storage facility and/or contractor's yard. Following an appeal, the trial court reversed the Zoning Board's decision, concluding that the Zoning Board's findings of fact did not establish any factors necessary to authorize a variance.

The Zoning Board denied Landowner's appeal. In its written decision, the Zoning Board made 20 findings of fact, which include, in pertinent part, the following:

6. The Property is located in the Township's C-1 General Commercial Zoning District ("C-1 District").

. . . .

11. [A] vacant single-family dwelling sits on the adjacent 52 Grudevich Road property.

12. That single-family dwelling has existed on the 52 Grudevich Road [property] prior to November 1999 on an individual lot that existed prior to 1999.

13. The Township issued a "Notice of Condemnation" for the dwelling on the 52 Grudevich Road property on or about January 4, 2022. Applicant Exhibit 6.

14. The structure is classified as a single-family, one story, wood framed vacant structure. Applicant Exhibit 6.

15. The Township directed that the owner of the 52 Grudevich Road property "make the necessary repairs and improvements required to bring the [52 Grudevich Road property] into compliance with the provisions of the IPMC." Applicant Exhibit 6.

16. The owner of the 52 Grudevich Road property has not complied with this directive, but the Township has not moved forward with the condemnation process for the Property.

17. Applicant proposes to develop the Property to include a Business and Professional Office building. Applicant Exhibit 7.

18. To construct the proposed Business and Professional Office building, [Applicant] asserts that he needs a 75-foot variance to the 100-foot side yard variance established by Section 907.E.4 of the [Zoning Ordinance].

19. Notwithstanding Applicant's assertions in his Application that the 100-foot setback requirement "makes it impossible to build on this lot," an existing single family dwelling exists on the Property. Applicant Exhibit 7.

5

20.    *Further, Applicant acknowledged in his post-hearing submissions that the proposed commercial building could be constructed in conformity with the zoning ordinance.*

Zoning Board Decision at 2-3, Findings of Fact Nos. 6, 9, 11-20; R.R. 179a-80a (emphasis added).

The Zoning Board concluded that the residential use of the Adjacent Property governed the Property's side yard setback requirements. There was no evidence that the owner of the Adjacent Property intended to abandon the current residential use. While the condemnation notice stated that the structure was not fit for human habitation, the order also directed the owner to bring the property into compliance with the provisions of the 2012 IPMC. Because of the Adjacent Property's residential use, Landowner's proposed office building must satisfy the 100-foot side yard setback from the boundary with the Adjacent Property.

The Zoning Board also concluded that Landowner did not satisfy the five-part test for a variance set forth in the Pennsylvania Municipalities Planning Code (MPC)[4] and the Zoning Ordinance. Specifically, Landowner had to prove: (1) an unnecessary hardship resulting from the unique physical circumstances or conditions of the property; (2) that these physical circumstances make a reasonable use of the property in strict conformity with the zoning ordinance impossible; (3) the alleged hardship is not self-inflicted; (4) the requested variance will not destroy the character of the neighborhood; and (5) the requested variance represents the least possible modification of the zoning ordinance restrictions. Zoning Board Decision at 8-9; R.R. 185a-86a. Landowner could not demonstrate a hardship because Landowner acknowledged it was "[t]heoretically" possible to build the proposed

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

6

commercial building within the required setbacks. R.R. 148. *See also* Zoning Board Decision at 3, Finding of Fact No. 20; R.R. 180a.

Landowner appealed the Zoning Board's decision to the trial court.

**Trial Court Order**

The trial court denied Landowner's land use appeal. The trial court explained that, although it "[did] not necessarily agree with the Township's decision," it concluded that the Zoning Board did not abuse its discretion. Trial Court Order, 11/6/2024, at 1. The term "use" is defined in the Zoning Ordinance as "the specific purpose for which land or a building is designated, arranged, intended, or for which it is or may be occupied or maintained." ZONING ORDINANCE §202. Although the residence on the Adjacent Property has been condemned, the Zoning Board found that it has been "designated, arranged [or] intended" for residential use, and this use has continued to exist. Trial Court Order, 11/6/2024, at 2.

In its Pa.R.A.P. 1925(a) opinion, the trial court explained that residential uses created prior to November 1999 are permitted by right in the C-1 District. This includes the Adjacent Property, and the notice of condemnation did not change that use. The trial court again acknowledged that although it may have made a different decision, under the law, "a court may not substitute its judgment for that of the board; and, assuming the record demonstrates substantial evidence, the court is bound by the board's findings[.]" Trial Court Pa.R.A.P. 1925(a) Op. at 6. Here, the Zoning Board's findings were supported by substantial evidence.

As to Landowner's request for a dimensional variance, the trial court explained that the Property can be and has been developed in conformity with the Zoning Ordinance. Even Landowner acknowledged that it would be possible to

7

build an office building within the required setbacks.  Finally, Landowner did not present any evidence that the requested variance was the minimum needed.

Landowner appealed the trial court's decision.

## Appeal

On appeal,[5] Landowner raises the following four issues:

1.     Did the [trial court] adequately and appropriately address how or why the Decision of the [Zoning Board] was supported by "Substantial Evidence."

2.     Did the [trial court] err in agreeing with the conclusion that Cecil Township, despite through its own authority, specifically the Code Enforcement Officer, determining that the compilation of materials that existed at [the Adjacent Property] was condemned, unable to be occupied, unfit for human habitation and the like, that such still constituted a structure "designated, arranged or intended" for residential use.

3.     Did the [trial court] err in failing to appropriately address the inconsistencies in the Cecil Township Ordinances.  Said inconsistencies exist by the lack of definition, failure to consistently apply said Zoning Ordinance, and failure to enforce the legislatively enacted requirements of the Commercially Zoned District.

4.     Did the [trial court] err in failing to appropriately address whether the requirements for a Variance were met.

Landowner Brief at 2.  In the argument section of his brief, Landowner addresses two issues: (1) whether the use existing on the Adjacent Property qualifies as a

---

[5] Where a trial court receives no additional evidence on appeal from the zoning board's decision, the appellate court's review determines whether the zoning board committed an abuse of discretion, an error of law, or made findings of fact not supported by substantial evidence. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment of City of Pittsburgh*, 604 A.2d 298, 301 (Pa. Cmwlth. 1992).  An abuse of discretion occurs where the zoning board's findings are not supported by substantial evidence.  *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998).  Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a finding of fact.  *Id.*

residential use, and (2) whether the denial of a dimensional variance was supported by substantial evidence. Because the Pennsylvania Rules of Appellate Procedure require the argument section of a brief to address each question raised,[6] we do not address Landowner's first and third issues.

**Relevant Principles of Law**

The interpretation of a municipal ordinance presents a question of law subject to *de novo* review for which our scope of review is plenary. *Northampton Area School District v. Zoning Hearing Board of Township of Lehigh*, 64 A.3d 1152, 1157 (Pa. Cmwlth. 2013). We "construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning." *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). Further, "ambiguous language in an ordinance [must be] construed in favor of the property owner and against any implied extension of the restriction[.]" *Delchester Developers, L.P. v. Zoning Hearing Board of Township of London Grove*, 161 A.3d 1081, 1104 (Pa. Cmwlth. 2017). A zoning ordinance is ambiguous "if the pertinent provision is susceptible to more than one reasonable interpretation, or when the language is vague, uncertain, or indefinite." *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015) (citation omitted).

Generally, a zoning board's interpretation and application of a zoning ordinance is entitled to deference. *Delchester Developers, L.P.*, 161 A.3d at 1104.

---

[6] The rules state that the brief's argument "shall be divided into as many parts as there are questions to be argued[.]" PA.R.A.P. 2119(a). Issues raised but not addressed within the argument section of the brief are deemed waived. *Borough of Ulysses v. Mesler*, 986 A.2d 224, 227 (Pa. Cmwlth. 2009).

9

However, such deference does not come "into play when the statute is clear." *Seeton v. Pennsylvania Game Commission*, 937 A.2d 1028, 1037 (Pa. 2007).

In a variance, the applicant bears the burden of proving that the application satisfies the zoning ordinance's requirements therefor. *Schindler Elevator Corporation v. Department of Labor and Industry*, 303 A.3d 874, 882 (Pa. Cmwlth. 2023) (citation omitted). The "quantum of proof" needed to establish "unnecessary hardship" for a dimensional variance is reduced because "the grant of a dimensional variance is of lesser moment than the grant of a use variance." *Hertzberg*, 721 A.2d at 47-48. A dimensional variance may be granted upon evidence of a financial hardship to bring the property "into strict compliance with the zoning requirements[.]" *Id*. at 50.

## Analysis

### I. Residential Use of Adjacent Property

In his first issue, Landowner argues that the Adjacent Property does not qualify as a "residential use." The existing structure is "so deteriorated, or dilapidated, or has become out of repair as to be dangerous, unsafe, unsanitary, or otherwise unfit for human habitation or occupancy" that it cannot be considered an ongoing residential use. Landowner Brief at 6. Because the Adjacent Property can no longer be considered a residential use, a 100-foot side yard setback is not the applicable dimensional standard.

The Township responds that the term "use" is defined in the Zoning Ordinance, in part, as the purposes for which a building is "designated, arranged, intended, or for which it is or may be occupied or maintained." Township Brief at 14-15 (quoting ZONING ORDINANCE §202). The definition does not specify that the structure must be fit for human habitation.

10

Uses in the C-1 District include single-family dwellings.  The Zoning Ordinance states, in relevant part, as follows:

> 38. Single family* and multi-family dwellings* on individual lots of record created prior to November 1999.  (Single family and multi-family dwellings proposed on individual lots of record created prior to November 1999 and where such lot abuts commercial uses on (2) or more sides shall be addressed as a Conditional Use in C(5) below).
>
> * New residential construction or residential development in an existing Commercial District will not subject any existing or future commercial establishment or existing Commercial lot of record to any additional landscaping requirements beyond that which would be required if the new adjacent use was commercial.

ZONING ORDINANCE §907.B(38).   Regarding the setback requirements for uses within the C-1 District, the Zoning Ordinance provides as follows:

| | | |
|---|---|---|
| Minimum Lot Size | With public sewer: | 20,000 sq. ft. |
| | Without public sewer: | 40,000 sq. ft. |
| | Planned Shopping Center: | 5 acres |
| Minimum Lot Width At Front Yard Setback | | 100 feet |
| Minimum Front Yard Setback | | 45 feet |
| Minimum Side Yard Setback | Adjoining Residential District or Use: | 100 feet |
| | Adjoining All Other: | 25 feet |
| Minimum Rear Yard Setback | Adjoining Residential District or Use: | 100 feet |
| | Adjoining All Other: | 40 feet |
| Maximum Building Height | | 5 stories or 65 feet |
| Maximum Building Coverage | See Maximum Impervious Surface Coverage | |
| Maximum Impervious Surface Coverage – Includes Building, Parking, Sidewalks. | | 70% |

ZONING ORDINANCE §907.E.  The setbacks apply to the building, the parking lot, and any sidewalks.

The Zoning Ordinance does not define the term "residential use," but this omission does not render the term ambiguous.  *Commonwealth v. Gamby*, 283

11

A.3d 298, 307 (Pa. 2022). The Zoning Ordinance defines "use" as "*[t]he specific purpose for which land or a building is designated, arranged, intended*, or for which it is or may be occupied or maintained." ZONING ORDINANCE §202 (emphasis added). The term "residential land use" has been defined as "[l]and use involving human dwellings." BLACK'S LAW DICTIONARY 1049 (12th ed. 2024). The Zoning Ordinance defines "dwelling" as a building with "one or more dwelling units used, *intended, or designed to be* built, used, rented, leased, let or hired out to be *occupied, or which are occupied for living purposes*, not including hotels and motels or boardinghouses and lodging houses." ZONING ORDINANCE §202 (emphasis added). The Zoning Ordinance attaches a residential use not to a particular building, *i.e.*, a dwelling, but to the lot. In other words, the use runs with the land.

The Zoning Board found that the vacant single-family dwelling on the Adjacent Property, which existed before November 1999, defined "[t]he specific purposes for which" the land "is designed." ZONING ORDINANCE §202. The Zoning Ordinance does not provide that a dwelling's lack of occupancy or disrepair will terminate its residential use.

Landowner argues that the residential use of the Adjacent Property has been abandoned. However, the abandonment criteria in Section 1804 of the Zoning Ordinance applies to "nonconforming properties, uses, and structures." *See* ZONING ORDINANCE §§1801, 1804. Here, the residential use exists by right.

Under the Zoning Ordinance, the use runs with the land. The Adjacent Property has had a residential use since prior to 1999, when the Zoning Ordinance was enacted, and it is irrelevant that the house on the Adjacent Property has been condemned. Given the Adjacent Property's residential use, the Zoning Board

12

correctly concluded that the 100-foot side yard setback applied to Landowner's proposed office building.

## II. Dimensional Variance

In his second issue, Landowner argues that the Zoning Board erred and abused its discretion by denying his alternative request for a dimensional variance. He contends that the size of his Property, relative to the 100-foot side yard setback, makes it impossible to exercise his "right to place a permitted commercial use on the [P]roperty." Landowner Brief at 13.

In response, the Township argues that there is no proof of hardship. Landowner is currently making reasonable, residential use of the Property, to generate rental income. Landowner only needs the variance from the side yard setback requirement because he wants to change the existing use. Stated otherwise, Landowner created the alleged hardship he seeks to remedy.

The Zoning Ordinance sets forth the requirements for a variance:

The variance procedure is intended to provide a narrowly circumscribed means by which relief may be granted from unforeseen particular applications of sections of this Chapter not relating to subdivision requirements. When such hardships may be more appropriately remedied, if at all, pursuant to other provisions of this Chapter, the variance procedure is inappropriate. . . . Upon appeal from an order or determination of the Zoning Officer or upon application, the Zoning Hearing Board shall have the power to vary or adjust the strict application of rules and requirements in accordance with the provisions of the Pennsylvania Municipalities Planning Code, provided that the following findings are made where relevant in a given case:

> a. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is

13

due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

b. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

c. That such unnecessary hardship has not been created by the appellant.

d. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

e. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

ZONING ORDINANCE §404.A.1. Unnecessary hardship can be shown by "demonstrating either that physical characteristics of the property are such that the property cannot be used for the permitted purpose or can only be conformed to such purpose at a prohibitive expense, or that the property has either no value or only a distress value for any permitted purpose." *Bernotas v. Zoning Hearing Board of City of Bethlehem*, 68 A.3d 1042, 1049 (Pa. Cmwlth. 2013).

However, the unnecessary hardship required for the grant of a dimensional variance is evaluated under somewhat relaxed standards. As this Court has explained:

Under *Hertzberg*, [721 A.2d 43,] courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "*the economic detriment to the applicant if the variance*

14

*was denied*, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and *the characteristics of the surrounding neighborhood.*" *Id.* at 50 (emphasis added).

Although *Hertzberg* eased the requirements, it did not remove them. *Tri–County* [*Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488 (Pa. Cmwlth. 2014)]. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. *Id.* Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg. Id.*

*Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015). In *Tidd*, this Court affirmed the zoning board's grant of dimensional variances for the placement of horse corrals and pastures because existing trees and the presence of an extensive utility easement limited the property's usable land by about 25%. This constituted an unnecessary hardship. Likewise, in *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn*, 838 A.2d 819 (Pa. Cmwlth. 2003), we affirmed the grant of dimensional variances to allow a school district to renovate an abandoned building into an elementary school. Because the existing building occupied almost the entire lot, there was no space for off-street parking, as required by the zoning ordinance. The only way to provide off-street parking would have been to demolish the building at a high cost. This constituted unnecessary hardship.

By contrast, in *Dunn v. Middletown Township Zoning Hearing Board*, 143 A.3d 494 (Pa. Cmwlth. 2016), the landowner sought to replace a single-family residence with three single-family residences on three new lots. This Court reversed the grant of a dimensional variance for the stated reason that the landowner could

make reasonable use of the property with the existing single-family residence. *Id.* at 505. Likewise, in *Pequea Township v. Zoning Hearing Board of Pequea Township*, 180 A.3d 500 (Pa. Cmwlth. 2018), this Court reversed the grant of a variance from the height restriction to add a second floor to the garage. The owner asserted that this was the only option for expansion given the property's in-ground pool. This Court explained that the owner's desire to "employ his property exactly as he wishes" did not constitute unnecessary hardship. *Id.* at 507 (quoting *Yeager v. Zoning Hearing Board of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001)) (emphasis omitted).

Landowner's variance application states that the Property cannot be developed with the proposed business/office building, a use permitted by right in the C-1 District, without a variance from the dimensional requirements in the Zoning Ordinance. However, Landowner acknowledged before the Zoning Board that it was "[t]heoretically" possible to build the proposed commercial building within the required setbacks if he removes the existing residential dwelling, which Landowner stated that he intended to do. Zoning Board Decision at 8-9; R.R. 185a-86a (quoting Landowner's Post-Hearing Brief at 6; R.R. 148a). *See also* Zoning Board Decision at 3, Finding of Fact No. 20; R.R. 180a ("Applicant acknowledged in his post-hearing submissions that the proposed commercial building could be constructed in conformity with the zoning ordinance.").

Landowner did not develop his claim that reducing the commercial use of his parcel by one-third rendered his ability to develop the Property in conformity with the Zoning Ordinance an impossibility. Accordingly, Landowner did not establish the requirements for a dimensional variance.

## Conclusion

In sum, under the Zoning Ordinance, the use runs with the land. Here, the Adjacent Property has had a residential use since prior to 1999, when the Zoning Ordinance was enacted. As such, the 100-foot side yard setback applies to Landowner's proposed office building. Additionally, Landowner did not establish the requirements necessary for a dimensional variance because he did not show an unnecessary hardship or that the Property could not be developed in strict conformity with the provisions of the Zoning Ordinance. Accordingly, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles W. Shane, Jr.,     :
     Appellant    :
          :
    v.       :    No. 1756 C.D. 2024
          :
Cecil Township Zoning Hearing   :
Board and Cecil Township Board   :
of Supervisors       :

# **O R D E R**

AND NOW, this 15th day of January, 2026, the order of the Court of Common Pleas of Washington County, dated November 21, 2024, is AFFIRMED.

_____ 
MARY HANNAH LEAVITT, President Judge Emerita