IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Galownia,                          :
                          Appellant       :
                                          :
          v.                              : No. 1351 C.D. 2024
                                          : Submitted:  December 8, 2025
Zoning Hearing Board of                   :
Cecil Township                           :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                                    FILED:  June 22, 2026


        Thomas Galownia (Galownia), representing himself, appeals the order of the
Washington County Court of Common Pleas (Common Pleas), dated September 25,
2024, that affirmed the Zoning Hearing Board of Cecil Township's (Board) decision
to deny his application for a dimensional variance.  Additionally, Galownia has filed
written communications in this Court, which were docketed as applications to amend
his appellate brief.  After careful review, we grant the applications in part, deny them
in part, and affirm Common Pleas' order.

# BACKGROUND

This appeal involves a fence Galownia installed on his property (Property) in the Cecil Township R-2 Medium Density Residential Zoning District. Supplemental Reproduced Record (Suppl. R.R.) at 67b-68b. The Zoning Officer issued a Notice of Violation to Galownia on September 1, 2023, indicating the fence violated the Cecil Township Unified Development Ordinance[1] (Ordinance) because it was over six feet in height. *Id.* at 67b. Galownia's fence was approximately 10 feet in height and was constructed of boards, plywood, and locust posts. *Id.* The Ordinance provides:

**E. Fences, walls and hedges.**

1. Fences, walls, and hedges may be permitted in any required yard or along the edge of any yard, provided that driveway entrances are not shielded by the fence, wall, or hedges in such a way as to obstruct the view of a driver entering a road from the driveway. In addition, fences shall not obstruct visibility at intersections.

2. No fence, wall, or other obstruction (except a required retaining wall) shall be more than six (6) feet in height, except when located within a platted residential subdivision. No barbed wire (except in agricultural areas), metal spikes, or other dangerous fence shall be erected or maintained unless in a Commercial or Industrial district, with such dangerous portion of the fence at least eight (8) feet above the ground.

3. In a platted residential subdivision; fences, latticework, screens, or walls not more than six (6) feet in height may be located in the required side or rear yard, and a hedge, open fence, or a wall maintained so as not to exceed three (3) feet in height may be located in any front yard. For purposes of this section, those portions of the side and rear yards which abut a street shall be treated as front yards.

---

[1] Township of Cecil Unified Development Ordinance (2000), *as amended*.

2

4. For purposes of fence, wall, and hedge regulations, any yard that abuts a street from which access is prohibited shall be treated as either a side or rear yard, but not as a front yard.

Section 1204(E) of the Ordinance.

Galownia filed an application requesting a dimensional variance for his fence, and the matter proceeded to a hearing before the Board on October 16, 2023. At the hearing, Galownia contended it was unreasonable to impose a six-foot restriction on the fence because of an elevation difference between his property and the property of his next-door neighbors, Joseph and Esther Urbas (collectively, the Urbases). Suppl. R.R. at 11b-12b. Specifically, Galownia testified the Urbases' driveway is elevated "2 ½ to 3 feet above the bottom of my fence." *Id.* He also contended his fence is "a security barrier or security fence," and such fences "go anywhere from 8 to 20 feet." *Id.* at 12b-13b.

Galownia testified he installed the fence because his once-cordial relationship with the Urbases had deteriorated. Galownia recounted that Joseph Urbas "called up the police" and accused Galownia of pointing a video camera on the Property at the Urbases' window. Suppl. R.R. at 16b-17b. According to Galownia, he installed the camera to "test[] for the distance," and the camera was actually aimed at a tree. *Id.* at 17b. Galownia expressed concern regarding a dog that was sometimes present at the Urbases' property and recalled an incident during which Esther Urbas yelled at him after he entered her property to cut limbs from a tree on his Property. *Id.* at 14b-24b. Galownia testified:

> There was no relationship, that's what scared me. I'm afraid that if I look over there, now I've got a granddaughter, okay, she has what they call late talker, but I think she has Einstein syndrome, but

3

regardless, she tends to look at people, I mean stare at them. If she saw you and you're new, she would stare at you.

I have a tree back there that she climbs in, and I have a trampoline that's 13 to 14 feet high, okay, and I'm concerned that since these people have been my good friends for 40 years, they have changed. Okay, something's changed, damn it.

I just read about a guy, a 74-year-old guy who went to this other guy who was cutting the tree off on the property line for his dad, and the 74-year-old came over and shot him.

So I'm concerned, somebody's changed, something's changed with these people. They were really good friends, okay, so what happened? I didn't do anything. I don't recall doing anything. I'm not one to talk politics. I know that she's an anti-vaxer, that's the only thing I know, I had my COVID shots, I don't know if that had something to do with it. The relationship completely changed.

I don't want to have them to call the police and say I'm looking at them, or I don't want to have my granddaughter looking at them and them saying something and then being afraid maybe they will yell at her.

. . . .

I don't want them taking my picture, okay, because I was up on my elevated up there when Mrs. Urbas had, I don't know if she was taking my picture or not, but she had her phone up like this (indicating). I don't want them to take my picture and I don't want to be accused of taking any of their pictures or video.

And again, I have my daughter-in-law[2] who has a tendency to stare, and there's a tree back there she climbs in, so I've got it elevated. That's why when the fence goes back, if she happens to be up in the tree, she can't stare at anybody because the fence is that way. I don't

---

[2] The Board also heard testimony from Galownia's son, Tim Galownia, who generally echoed his father's concerns regarding their strained relationship with the Urbases and clarified that Galownia meant to say "granddaughter," rather than "daughter-in-law." Suppl. R.R. at 30b-34b. The context of Galownia's statement, i.e., the references to staring and climbing in a tree, confirms that he was referring to his granddaughter.

4

want her to be yelled at or be accused of, my granddaughter, staring, because she will do that, and my son can attest to that.

Suppl. R.R. at 18b-19b, 27b-28b.

In response, Joseph Urbas testified and presented photographs of Galownia's fence, including one that showed the elevation of the Urbases' driveway relative to the fence. *See* Suppl. R.R. at 34b. He asserted Galownia had "never done any tree trimming" and decried the "pitiful workmanship and the height of the fence." *Id.* at 35b-37b. Esther Urbas testified Galownia installed a camera that was "aimed at our house." *Id.* at 39b. She described Galownia's fence as "ugly" and excessively high and disputed his account of the incident involving the tree on his Property, asserting Galownia threw branches from the tree into the Urbases' yard. *Id.* at 40b-42b.

Dennis Fleeher (Fleeher), a neighbor, testified the height of Galownia's fence was "ridiculous," and no other home in the neighborhood had a fence as high. Suppl. R.R. at 44b. Fleeher testified the fence was poorly constructed and Galownia should have located the fence "off of the property line" so that he could maintain the side of the fence facing the Urbases' property. *Id.* Additionally, Fleeher expressed concern that Galownia's fence would negatively affect the value of his property, explaining, "I got a $600,000 house beside [the fence] that I'm planning on selling, I don't want my property value depreciated by looking at these fences. There are no fences like this in the neighborhood at all." *Id.* at 44b-45b.

Although the Board chair asked whether there were "[a]ny questions" for the Urbases and Fleeher at the conclusion of their respective testimonies, it is not clear from the record whether the Board chair was providing Galownia the opportunity to cross-examine the witnesses or merely asking whether other members of the Board or the Board's counsel had questions. *See* Suppl. R.R. at 36b-38b, 42b, 45b. After the witnesses testified, Galownia did not conduct cross-examination, ask to conduct

cross-examination, or ask to present any evidence in rebuttal. The Board recessed to deliberate privately on Galownia's variance application. *Id.* at 45b. The Board then resumed the meeting and voted to deny the application. *Id.* at 45b-47b.

The Board's counsel informed Galownia his variance application was denied by letter dated October 17, 2023, and mailed findings of fact and conclusions of law to Galownia by letter dated October 18, 2023. The findings of fact and conclusions of law indicated the Board did not find Galownia credible that there was an elevation difference between his property and the Urbases' driveway because "Galownia did not submit any surveys, plans, photographs or any other evidence" in support of this assertion. Suppl. R.R. at 69b. In addition, the Board did not find Galownia credible that the fence was necessary for safety reasons. *Id.* at 69b-70b. With respect to the camera that Galownia installed, the Board reasoned it was irrelevant to the variance application whether the camera was aimed at the Urbases' home, although the Board expressed sympathy regarding the Urbases' privacy concerns. *Id.* at 70b. The Board concluded Galownia failed to meet the standards for obtaining a variance:

> 12. . . . [Galownia] has not demonstrated any unique hardship with his Property or the [f]ence. Unlike the cases where height variances were granted, [Galownia's] Property has no unique physical circumstances or conditions that creates an unnecessary hardship that prevents the Property from being developed in conformity with the [Ordinance].

> 13. . . . [Galownia] has not demonstrated that complying with the [Ordinance] will be excessive, that an economic hardship will result from a denial of his [a]pplication, or that the [f]ence is consistent with the characteristics and conditions of the surrounding neighborhood. To the contrary, Mr. Fleeher expressly testified that no one in the neighborhood had a fence as high as the [f]ence.

> 14. ln addition, [Galownia] has not demonstrated that because of such physical circumstances or conditions, there is no possibility that the Property can be developed in strict conformity with the provisions

6

of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property. To the contrary, as set forth in the [a]pplication and testified to at the hearing, [Galownia] has lived on the Property for decades and did not install the [f]ence until June 2022.

15. ln addition, this hardship was created by [Galownia]. [Galownia] specifically installed a fence without seeking the proper zoning approvals or permits.

16. Next, the requested variance will alter the character of the neighborhood. Specifically, as noted above, Mr. Fleeher expressly testified that no one in the neighborhood had a fence as high as the [f]ence. ln addition, there was credible testimony from several residents that the fence was ugly, poorly constructed and an eyesore.

17. Finally, the requested variance is not the minimal variances necessary to afford relief. Other than testifying that the fence was already built, [Galownia] did not provide any credible justification for a 10-foot fence. As noted above, the Board finds that [Galownia's] assertion that a 10-foot fence was necessary for his safety is not credible.

Suppl. R.R. at 73b.

Galownia retained counsel and appealed to Common Pleas, which did not take additional evidence but heard argument. Common Pleas affirmed the Board by order dated September 25, 2024. In its accompanying opinion, Common Pleas addressed the merits of Galownia's request for a variance, emphasizing that the Board did not find Galownia's testimony credible, and that Galownia did not present corroborating evidence. Suppl. R.R. at 111b-13b. Galownia filed an unrepresented appeal[3] to this Court and, after an extension, complied with Common Pleas' order directing him to file a concise statement of errors complained of on appeal. Common Pleas issued an

---

[3] Galownia's counsel filed a motion to withdraw after Galownia filed the appeal, which Common Pleas granted.

opinion explaining, in pertinent part, that Galownia had alleged for the first time that the Board did not allow him to present rebuttal evidence at the hearing:

> [A] review of the brief that Mr. Galownia's Counsel submitted makes clear that Mr. Galownia did not previously contend that he was deprived of the right to submit rebuttal evidence. Indeed, Mr. Galownia and his son were given a full opportunity to present evidence to the [Board]. Despite the [Board] querying if Mr. Galownia had questions of other witnesses, he did not avail himself of the chance to cross-examine those persons. Further, Mr. Galownia made no request to offer rebuttal evidence at the [Board] hearing. The admissibility of rebuttal evidence is at the tribunal's discretion.
>
> In the instant case, Mr. Galownia never asked the [Board] or this court to consider rebuttal evidence. If parties do not request that the trial court hear additional evidence, they waive arguments which were not raised before the [Board].

Suppl. R.R. at 193b (citations and quotation marks omitted). On December 2, 2024, Galownia filed a motion, purportedly requesting reconsideration of Common Pleas' opinion. Common Pleas denied Galownia's motion in an order docketed December 10, 2024.

In his brief to this Court, Galownia contends the hearing before the Board was unlawful because he did not have "the opportunity to respond and present evidence and argument and cross-examine adverse witnesses." Galownia's Br. at 2-7 (quoting Section 908(5) of the Pennsylvania Municipalities Planning Code (MPC)).[4] Though Galownia does not dispute that the Board chair inquired during the hearing whether there were any other questions for the witnesses, he contends the inquiries were not directed at the audience or the witnesses but instead were directed at the other Board members. *Id.* at 3. Galownia contends there was one podium and one microphone at the hearing for the testifying witness but no podium or microphone for anyone to ask

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(5).

8

cross-examination questions. *Id.* Galownia challenges Common Pleas' handling of his motion for reconsideration, suggesting Common Pleas denied the motion simply because he used the term "rebuttal" in his concise statement and did not specifically request "cross-examination." *Id.* at 4. Galownia also questions the Board's decision to deliberate on his variance application in private, contending all discussions by the Board, including discussions of credibility, should be part of a public hearing.[5] *Id.* at 6-7.

## DISCUSSION

Common Pleas did not take additional evidence below. Thus, our review "is limited to determining whether [the Board] abused its discretion or erred as a matter of law." *Bird v. Zoning Hearing Bd. of Mun. of Bethel Park*, 320 A.3d 843, 848 n.8 (Pa. Cmwlth. 2024), *appeal denied*, 333 A.3d 303 (Pa. 2025). We will find an abuse of discretion if substantial evidence does not support the Board's findings of fact. *Id.* Importantly, as the finder of fact in this dispute, the Board was "the sole judge of the credibility of witnesses and the weight to be afforded their testimony," and this Court

---

[5] Galownia filed written communications in this Court on April 3, 2025, and June 30, 2025, which we docketed as applications to amend his appellate brief. The April 3, 2025 application includes a directory for exhibits Galownia previously attached to his brief, a transcript from argument before Common Pleas on Galownia's motion for reconsideration, and a letter Galownia received from the Office of Open Records relating to his claim that the Board should not have deliberated in private. Galownia explains in the June 30, 2025 application that he is no longer requesting another hearing before the Board if we decide this appeal in his favor because he alleges the Board is biased against him. Galownia then goes on to discuss and provide documentation regarding a subsequent dispute between himself and Cecil Township involving bees he keeps on his Property. We grant the April 3, 2025 application with respect to the exhibit directory, which is helpful in navigating Galownia's brief. We deny the application with respect to the transcript, because it is already part of the record before this Court, and with respect to the Office of Open Records' letter, because it is irrelevant to this matter. Additionally, we deny the June 30, 2025 application in its entirety because Galownia's requested relief is moot given our disposition of this appeal, and his subsequent dispute involving bees is also irrelevant to this matter.

9

may not substitute its appraisal of the evidence for that of the Board. *Oxford Corp. v. Zoning Hearing Bd. of Borough of Oxford*, 34 A.3d 286, 295 n.9 (Pa. Cmwlth. 2011).

In relevant part, the Ordinance provides the following requirements regarding variances:

1. Purpose

> The variance procedure is intended to provide a narrowly circumscribed means by which relief may be granted from unforeseen particular applications of sections of this Chapter not relating to subdivision requirements. When such hardships may be more appropriately remedied, if at all, pursuant to other provisions of this Chapter, the variance procedure is inappropriate. No nonconforming use of neighboring lands, structures, or buildings in the same district and no permitted or nonconforming uses of lands, structures, or buildings in other districts shall be considered grounds for issuance of a variance. Upon appeal from an order or determination of the Zoning Officer or upon application, the . . . Board shall have the power to vary or adjust the strict application of rules and requirements in accordance with the provisions of the [MPC], provided that the following findings are made where relevant in a given case:
>
> a. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> b. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a

10

> variance is therefore necessary to enable the reasonable use of the property.
>
> c. That such unnecessary hardship has not been created by the appellant.
>
> d. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> e. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Section 404(A)(1) of the Ordinance.

Galownia filed an application requesting a dimensional variance with respect to his fence. "A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations . . . ." *Dunn v. Middletown Twp.*, 143 A.3d 494, 501 (Pa. Cmwlth. 2016). To discern whether the applicant has established unnecessary hardship for the purpose of a dimensional variance, relevant factors include "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *See id.* (quoting *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998)).

Here, Galownia does not question the legal standard applicable to his variance application, nor does he question the substance of the Board's analysis other than its credibility determinations. We must reiterate that the Board was the finder of fact in this case and was entitled to weigh the evidence and make credibility determinations.

11

*Oxford Corp.*, 34 A.3d at 295 n.9. Significantly, "[a] zoning hearing board is free to reject even uncontradicted testimony it finds lacking in credibility." *Conshohocken Borough v. Conshohocken Borough Zoning Hearing Bd.*, 261 A.3d 582, 597 (Pa. Cmwlth. 2021). The Board's findings are binding on this Court so long as the record contains substantial evidence to support them. *See id.* at 592 n.5.

Our review of the record in this matter reveals substantial evidence to support the Board's findings. Galownia testified there is an elevation difference between his Property and the Urbases' property. Suppl. R.R. at 12b. Potentially, a difference in elevation could be considered an "exceptional topographical" condition that justifies a variance. *See* Section 404(A)(1)(a) of the Ordinance. Galownia acknowledged, however, that only the Urbases' driveway is higher than his Property. Suppl. R.R. at 26b-29b. The record also contains photographs of Galownia's fence, which confirm there is no significant elevation difference between the properties at issue. *See id.* at 54b, 56b, 60b, 62b. Accordingly, there is no unnecessary hardship that would justify Galownia's 10-foot fence. Because Galownia constructed the fence before seeking zoning approval, he created any hardship that might exist. *See* Section 404(A)(1)(c) of the Ordinance; *In re: Wagner*, 339 A.3d 582, 590-91 (Pa. Cmwlth. 2025).

Additionally, Galownia testified he resided at the Property for decades before constructing the fence, which demonstrates Galownia was capable of developing his Property "in strict conformity with the provision of the" Ordinance. *See* Suppl. R.R. at 14b, 19b; Section 404(A)(1)(b) of the Ordinance. The fence is not consistent with the "essential character of the neighborhood," given testimony from the Urbases and Fleeher that it is ugly, poorly constructed, and taller than other neighborhood fences. *See* Suppl. R.R. at 36b, 40b, 44b; Section 404(A)(1)(d) of the Ordinance. Finally, given that there is no significant elevation difference between Galownia's Property

12

and the Urbases' property, a 10-foot fence is not "the minimum variance" that would afford relief to Galownia, nor would it "represent the least modification possible" of the Ordinance's height limits for fences. *See* Section 404(A)(1)(e) of the Ordinance.

Regarding Galownia's argument that the Board did not provide an opportunity for him to cross-examine witnesses or otherwise rebut the testimony of the Urbases and Fleeher, he is correct Section 908(5) of the MPC provides that "[t]he parties . . . shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." 53 P.S. § 10908(5). Case law recognizes that the Board is a quasi-judicial entity and must provide procedural due process when performing its adjudicatory function. *See Riccio v. Newtown Twp. Zoning Hearing Bd.*, 308 A.3d 928, 936 (Pa. Cmwlth. 2024). This means the Board must provide "an opportunity, among other things, to hear evidence adduced by an opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument." *Id.*

Our review of the record indicates Galownia did not request an opportunity to cross-examine witnesses or provide rebuttal during the hearing before the Board. In his notice of appeal to Common Pleas, Galownia contended the Board committed an abuse of its discretion and erred by concluding he did not establish an undue hardship but did not contend the Board denied him an opportunity to cross-examine witnesses or provide rebuttal. In addition, Galownia did not contend the Board denied him an opportunity to cross-examine witnesses or provide rebuttal in his brief to Common Pleas or during argument before Common Pleas. Galownia instead raised this claim for the first time in his concise statement, after appealing to this Court. Therefore, he failed to preserve the claim for our review. *See Palmer v. Susquehanna Twp. Zoning*

13

*Hearing Bd.*, 331 A.3d 129, 136 (Pa. Cmwlth. 2025) (explaining a claim may not be raised for the first time on appeal to Common Pleas without its permission).[6]

As summarized above, the Board chair asked during the hearing if there were "[a]ny questions" for the Urbases or Fleeher, but it is not clear if the Board chair was offering Galownia the opportunity to cross-examine the witnesses or merely asking if other members of the Board or the Board's counsel had questions. *See* Suppl. R.R. at 36b-38b, 42b, 45b. If Galownia had raised this claim earlier, Common Pleas could have considered it, taken additional evidence, or remanded the matter to the Board as necessary. *See* Section 1005-A of the MPC,[7] 53 P.S. § 11005-A. Thus, this waiver rule "ensures that the fact[-]finder has a full opportunity to create a reviewable record on all issues." *Palmer*, 331 A.3d at 136 (quoting *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth. 2002)).

Galownia also maintains the Board should not have been allowed to determine the credibility of his testimony while deliberating in private. However, our case law establishes that zoning hearing boards are entitled to deliberate privately:

> As an agency characterized predominantly by judicial characteristics and functions, it is particularly appropriate for zoning boards to deliberate privately. The necessity of collegiality to group decision-making of the highest quality is well established as is the degree to which collegiality and public deliberations are incompatible. The subjects to which zoning boards must apply their statutory authority increase the necessity both of collegiality and privacy. Disputes between neighboring property owners, adjoining homeowners, long-term residents and erstwhile newcomers, citizens' groups and developers, residents and the owners of existing and proposed incompatible neighboring commercial, industrial, and institutional uses of land—these are the regular fare of zoning boards.

---

[6] *See also* Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a) (explaining an issue may not be raised for the first time on appeal to the appellate court).

[7] Added by Section 101 of the Act of December 21, 1988, P.L. 1329.

Emotional rancor of great intensity typically accompanies disputes of these types. Members of the local zoning board are charged by law to arbitrate these embroilments without passion or prejudice. They are expected and required to resist the intense pressure to which they are subjected from all sides and to decide the issues on their legal merits without regard for the identity or influence of the parties. The legal merits frequently turn on the credibility of and weight to be accorded to the testimony of witnesses appearing before the board; often including public officials and community leaders. Frequently, zoning boards must choose between unpalatable alternatives. Under these circumstances, it is simply not possible for zoning board members frankly to exchange their views in a public forum. The deliberation of matters so charged with emotion and political signification must be cloaked with the protection of privacy if it is to assist the board in carrying out its weighty decisional responsibilities.

*Kennedy v. Upper Milford Twp. Zoning Hearing Bd.*, 834 A.2d 1104, 1116-17 (Pa. 2003) (footnotes omitted).

Finally, to the extent Galownia argues Common Pleas should have granted his motion for reconsideration, we observe the motion was untimely because Galownia did not file it within 30 days of Common Pleas' September 25, 2024 order affirming the Board. *See Oak Tree Condo. Ass'n v. Greene*, 133 A.3d 113, 117 (Pa. Cmwlth. 2016) (explaining "a trial court relinquishes its ability to act once the 30-day period has passed and a motion for reconsideration has not been expressly granted to toll the appeal period"). It was not procedurally proper for Galownia to seek reconsideration of Common Pleas' November 19, 2024 opinion, which was merely an explanation of its reasoning in support of the order.

## CONCLUSION

For the foregoing reasons, we conclude the Board did not commit an abuse of its discretion or an error of law in denying Galownia's application for a dimensional variance. Accordingly, we affirm Common Pleas' September 25, 2024 order, which

affirmed the Board.  We also grant in part and deny in part Galownia's applications to amend his appellate brief.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Galownia, :
                Appellant :
                 :
        v. : No. 1351 C.D. 2024
                 :
Zoning Hearing Board of :
Cecil Township :

**O R D E R**

    **AND NOW**, this 22nd day of June 2026, the written communications of Thomas Galownia filed April 3, 2025, and June 30, 2025, docketed as applications to amend his appellate brief, are **GRANTED IN PART** and **DENIED IN PART**, consistent with the foregoing decision. In addition, the order dated September 25, 2024, by the Washington County Court of Common Pleas, is **AFFIRMED**.

                                           _____
                                           STACY WALLACE, Judge